IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| HECTOR A. CASAS | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | B-96-207 |
| AMERICAN AIRLINES, INC., | § | |
| | § | JURY |
| DEFENDANT. | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant American Airlines, Inc. (hereinafter "American"), and pursuant to Rule 56 of the Federal Rules of Civil Procedure, files this its Motion for Summary Judgment and would respectfully show the Court the following:

### I.

### SCOPE OF THIS MOTION

This Motion for Summary Judgment embraces the Plaintiff's entire claim for lost baggage against Defendant American Airlines, Inc. The Motion is based upon the pleadings, the filed Affidavits (and attachments thereto) of Jo Ann Partida, Rich Ortega and Jeanette Munzon, the filed deposition of Plaintiff, Plaintiff's answers to interrogatories, and other summary judgment evidence on file, or on file at the time of the hearing, which proof entitles Defendant to summary judgment, or in the alternative, partial summary judgment.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT THEREOF - Page 1**

## II.

## BACKGROUND

On September 3, 1996, Plaintiff was returning on the second half of a round trip series of flights as a passenger on American Airlines Flight 2099 from Orlando, Florida to Dallas/Fort Worth International Airport, with a continuing flight from Dallas/Fort Worth to the Valley International Airport, Harlingen, Texas scheduled for the same day. Plaintiff checked two pieces of baggage at the Orlando Airport, one of which was a bag containing a video camera and various camera accessories. Because of various delays due in part to weather in the Orlando area, Plaintiff missed the last connecting flight to Harlingen that evening. Plaintiff spent the night at a Dallas/Fort Worth area hotel at Defendant's expense and traveled back to Harlingen the next morning. When he arrived at the Valley International Airport on September 4, 1996, he was able to retrieve one bag but the bag containing the camera equipment could not be located. After an extensive search by Defendant's personnel at the Valley International Airport and by Defendant's personnel at Central Baggage Service at the Dallas/Fort Worth Airport, Plaintiff's bag containing camera equipment could not be located. Plaintiff's entire claim against Defendant is based solely upon the lost camera and equipment

## III.

## GROUNDS FOR SUMMARY JUDGMENT

Summary judgment in favor of Defendant is proper based upon each of five (5) separate and independent grounds. First, Defendant is excluded from any liability for loss, delay or damage to cameras or camera equipment pursuant to the Contract of Carriage between the parties. Second, and in the alternative, the liability of Defendant, if any, is expressly limited to

$1,250.00 pursuant to the Contract of Carriage between the parties. Third, Defendant is excluded from liability, or, in the alternative, that liability is limited to $1,250.00 by federal statute and regulation. Fourth, as a matter of law, Defendant's limited or excluded liability is not affected by whether Defendant was "negligent", whether Defendant breached a part of the contract, or even if an employee of Defendant stole the camera equipment because such actions or conduct are immaterial under established law. Fifth, to the extent that Plaintiff's allegations against Defendant are based on state law, those claims are expressly preempted by federal law.

## IV.

### UNDISPUTED FACTS

1. American Airlines issued an airline ticket in Plaintiff's name on August 22, 1996, for round trip travel from Harlingen to Orlando, Florida beginning on August 29, 1996, with a return date of September 3, 1996. Partida Aff. ¶ 4, Exhibit 2.

2. Plaintiff was traveling on American Airlines to Orlando, Florida on August 29, 1996 for vacation at Disney World, a trip he had taken on two previous occasions. See Casas depo. p. 33, l. 3-8.

3. Plaintiff travels by air "quite a bit," is a member of American Airlines frequent flier program and has flown on all three air carriers that serve the Valley International Airport. Casas depo. p. 30, l. 17-19; p. 32, l. 11-14. p. 32., l. 21-24.

4. Plaintiff received his round trip ticket for his flight to Orlando, Florida on August 29, 1996 and return flight on September 3, 1996 by at least August 28, 1996, at least seven days prior to the incident flight. Casas depo. p. 39, l. 8-10.

5.    Plaintiff is a licensed attorney who had been practicing law approximately 10 years at the time of the incident.  Casas depo. p. 17, l. 21-23.

6.    Plaintiff had the opportunity to read the ticket if he so chose.  See Casas depo. p. 43, l.5-11.

7.    Plaintiff was aware that his ticket contained information that affected his legal rights.  Casas depo. p. 45, l. 11-14.

8.    Printed on the face of Plaintiff's passenger ticket is the statement "PASSENGER'S TICKET AND BAGGAGE CHECK-SUBJECT TO CONDITIONS OF CONTRACT ON THE REVERSE SIDE." Partida's Aff. ¶ 6, Ex. 4.

9.    Attached to Plaintiff's passenger ticket is a page with the heading "NOTICE" and "CONDITIONS OF CONTRACT".  Under Paragraph 3 of the "CONDITIONS OF CONTRACT" it is stated that "carriage and other services performed by each carrier are subject to: (i) provisions contained in this ticket, (ii) applicable tariffs, (iii) carrier's conditions of carriage and related regulations which are made part hereof (and are available on application at the offices of carrier)." This notice is a component part of every ticket issued.  Partida's Aff. ¶ 7, Ex. 5.

10.    The Conditions of Carriage, provide that:

AMERICAN IS NOT RESPONSIBLE FOR JEWELRY, CASH, CAMERA EQUIPMENT OR OTHER SIMILAR VALUABLE ITEMS CONTAINED IN CHECKED OR UNCHECKED BAGGAGE.  IF ANY OF THESE ITEMS ARE LOST, DAMAGED, OR DELAYED, YOU WILL NOT BE ENTITLED TO ANY REIMBURSEMENT UNDER EITHER AMERICAN'S STANDARD BAGGAGE LIABILITY OR UNDER ANY DECLARED EXCESS VALUATION.  THESE ITEMS SHOULD BE CARRIED PERSONALLY BY YOU.

Partida Aff. ¶ 10.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF - Page 4**

11. The booklet which contains Defendant's "CONDITIONS OF CARRIAGE" which is "available on application at the office of carrier," is available at all American Airlines and American Eagle ticket offices. Partida's Aff. ¶ 10.

12. Attached to Plaintiff's passenger ticket is a page containing the statement "NOTICE OF BAGGAGE LIABILITY LIMITATIONS" which states in pertinent part as follows: "[l]iability for loss, delay, or damage to baggage is limited unless a higher value is declared in advance and additional charges are paid .... For travel wholly between U.S. points, federal rules require any limit on an airline's baggage liability to be at least $1,250.00 per passenger. Excess valuation may be declared on certain types of articles. Some carriers assume no liability for fragile, valuable or perishable articles. Further information may be obtained from the carrier." Partida's Aff. ¶ 9, Ex. 7.

13. Plaintiff was familiar with the Valley International Airport, the American Airlines ticket counter and the American Airlines gate area at the time of the incident. Casas depo. p. 34, l. 19-21; p. 35, l. 5-7; p. 35, l. 22-24.

14. These are signs, in English and Spanish, at both the American Airlines ticket counter and American Airlines gate at the Valley International Airport, containing the following notices:

1. "Baggage Liability . . . liability for loss, delay or damage to baggage will be limited as indicated below, unless a higher valuation for the checked baggage has been declared and additional charges paid at check-in. Excess valuation may not be declared on certain types of articles."

2. "Domestic - Travel wholly within the 50 states, Puerto Rico and the U.S. Virgin Islands.

Baggage Liability - limited to $1250 per passenger. May be less on some airlines.

NO liability for camera equipment, jewelry, cash, electronic equipment, or other similar valuable items contained in checked or unchecked baggage. Passengers should personally carry these items, as well as medications or prescriptions."

Ortega Aff. p. 2, Ex. 1.

15.    Plaintiff checked two bags on September 3, 1996 at the American Airlines ticket counter at the Orlando International Airport. Casas depo. p. 67, l. 8-13.

16.    The American airlines ticket counter at the Orlando International airport containing the following notices:

1.    "Baggage Liability . . . liability for loss, delay or damage to baggage will be limited as indicated below, unless a higher valuation for the checked baggage has been declared and additional charges paid at check-in. Excess valuation may not be declared on certain types of articles."

2.    "Domestic - Travel wholly within the 50 states, Puerto Rico and the U.S. Virgin Islands.

Baggage Liability - limited to $1250 per passenger. May be less on some airlines.

NO liability for camera equipment, jewelry, cash, electronic equipment, or other similar valuable items contained in checked or unchecked baggage. Passengers should personally carry these items, as well as medications or prescriptions."

Munzon at Aff. p. 3.

17.    Excess valuation may be purchased by Plaintiff or any other passenger at any ticket counter. Partida Aff., Ex. 8.

18.    Plaintiff did not declare an excess value on his baggage. Casas depo. p. 96, l. 15-16.

19.    The camera case checked on September 3, 1996 was small enough to hand carry aboard the aircraft. Casas depo. p. 59, l. 13-16; p. 97, l. 5-8.

20.   Defendants do not guarantee simultaneous delivery of a passenger and his baggage at final destination.  The times shown in timetables or elsewhere are not guarantees and Defendant assumed no responsibility for making connections.  Partida Aff., Ex. 8, § 3.

21.   Notice provisions and signs of Defendant liability limitations are posted at all of Defendants' ticket counters, including the American Airlines ticket counter at Valley International Airport, the American Airlines ticket counter at the Dallas/Fort Worth International Airport, and the American Airlines ticket counter at the Orlando International Airport at all times material to this action.  Partida Aff. ¶ 11, Ex. 9; Ortega Aff. p. 2, Ex. 1; Munzon Aff. p. 3, Ex. 3.

22.   On September 16, 1996 Plaintiff completed a form provided by Defendant entitled "Statement of Property Loss" which is a statement of the items allegedly contained in Plaintiff's baggage after his September 3, 1996 flight. All the items listed as missing from Plaintiff's baggage on the "Statement of Property Loss" are camera equipment.  Partida's Aff, ¶ 6, Ex. 2; Casa Aff. ¶ 3, 12.

23.   Defendant denied Plaintiff's claim on the basis of the exclusion of liability for losses of camera equipment.  Partida Aff. ¶ 6, Casas Aff. ¶ 11.

## V.

## ARGUMENTS AND AUTHORITIES

## A.   SUMMARY JUDGMENT IS APPROPRIATE

Federal, not state law, governs this case relating to the liability exclusions and limitations of an air carrier with respect to interstate transportation of property.  Majors Jewelers v. ABX,

Inc., ___ F.3d ___, 1997 WL395254 (5th Cir. 1997)(hereinafter "Jewelers")[1]; Deiro v.
American Airlines, Inc., 816 F.2d 1360, 1365 (9th Cir. 1987).

In determining whether a passenger is contractually bound by the terms of the contract as
noted on or with the passenger ticket, the Fifth Circuit has adopted a "reasonable communicativeness"
test. Jewelers at *8 (citing Deiro, 816 F.2d at 1364). The reasonableness of the notice under this
test is a question of law to be determined by the court. Deiro 816 F.2d at 1364. Defendant
submits that the court's decision on the validity of the limitation and exclusion is ripe for
summary judgment. For example, on July 30, 1997 in Jewelers, the Fifth Circuit affirmed the
United States District Court for the Western District of Texas granting of an air carrier's motion
for summary judgment based upon the jewelry exclusions in that carrier's contract of carriage.
Jewelers at *8; see also Deiro, 816 F.2d at 1365; Lichten v. Eastern Airlines, Inc., 189 F.2d 939
(2d Cir. 1951)(summary judgment granted and air carrier not liable for jewelry contained in
checked baggage).

**B. THE RIGHTS AND LIABILITIES OF THE PARTIES ARE GOVERNED BY
THE CONTRACT OF CARRIAGE**

1. CARRIERS MAY LIMIT THEIR LIABILITY IN THEIR CONTRACT OF
CARRIAGE

Under the federal common law, a carrier may limit its liability for damaged or
lost baggage. See Jewelers at *7; Deiro, 816 F.2d at 1365. Air carriers, like surface
shippers, may validly exclude or limit their liability for articles entrusted to them either as
freight or checked baggage. See Tishman & Lipp, Inc. v. Delta Air Lines, 413 F.2d

---

[1]Two copies of the Jewelers opinion are attached to this Motion.

1401 (2d Cir. 1969)(carrier was excluded from liability for $50,000 of jewelry shipped as air freight; Lichten, 189 F.2d at 940.

There are two general classes of baggage that are subject to exclusions and limitations of the carrier's liability. First, there are certain types of articles which the carrier will not assume liability for the risk of loss if they are checked as baggage. Typically, these articles include valuable items such as cash, jewelry and camera equipment. Partida Aff. ¶ 9. Rather than accept liability for the risk of loss, the passenger is given notice that those articles should be carried by the passenger on the aircraft. Id. The second class of baggage includes non-excluded articles which the carrier will assume potential liability for risk of loss up to a limit of $1,250.00 per passenger. Id. at ¶10. In accordance with the "released valuation doctrine" the carrier will allow the passenger to purchase excess valuation to a higher amount for non-excluded items. Id.

With excludable items, however, the carrier is not liable for loss and the $1,250.00 limitation of liability provisions is not a factor. Tishman, 413 F.2d at 1405("the limitation of liability provision therefore does not come into play, since there is no liability at the outset").

The purpose of these exclusions and limitations is twofold. First, the passenger is assumed to be the best protector of his own property and is advised to carry very valuable items, such as jewelry, cash or camera equipment, personally on the aircraft so that the passenger may safeguard the property. Partida Aff. ¶ 10. Second, the carrier can better predict the approximate dollar amount of its liability for checked baggage and factor that amount into the price of a ticket. The Department of Transportation has found that an airline's exposure for the loss of valuable items would "add significantly to airlines' cost, thereby

resulting in higher ticket fares." <u>Wackenhut Corp. v. Lippert</u>, 609 S.2d 1304, 1307 (Fla. 1992), <u>cert denied</u>, 113 S. Ct. 2996 (1993)(*citing Complaint Against Limitation of Liability Tarriffs of Brantiff Airways, Inc. and Northwest Airlines, Inc.*, Docket 40373 (U.S. Dep't of Transp. Order Dismissing Complaint issued Dec. 2, 1987).

2. <u>REASONABLY COMMUNICATED EXCLUSIONS AND LIMITATIONS TO LIABILITY FOR LOST BAGGAGE ARE VALID AND BINDING ON THE PASSENGER</u>

For many years, it was a well established rule that if an air carrier had properly filed their tariffs with the CAB, these tariffs then formed the Contract of Carriage between the parties and "conclusively and exclusively govern[ed] the rights and liabilities between the parties". <u>Neal v. Republic Airlines, Inc.</u>, 605 F. Supp. 1145, 1147 (N.D. Ill. 1985); <u>Wadel v. American Airlines, Inc.</u>, 269 S.W.2d at 855, 857 (Tex. Civ. App.--Dallas 1954, writ dismissed by agreement). Under this rule, the passenger's notice of the tariffs was presumed based solely upon the carrier's proper filing of the tariffs with the CAB. <u>See Wadel</u>, 269 S.W.2d at 857. However, pursuant to the deregulation of air carriers, air carriers are now exempted from certain domestic tariff filing requirements. Accordingly, notification of provisions within a tariff are no longer presumed, but rather, notice must be provided by the carrier. <u>Neal</u>, 605 F. Supp. at 1148.

After the implementation of the deregulation of air carriers, federal regulations were enacted requiring the carrier to provide notice to the passenger of their limitation of liability. <u>See</u> 14 C. F. R. §254 ( 1996) ; 49 Fed. Reg. 5065 (1984).

C.    **DEFENDANT'S LIABILITY FOR LOSS OF CAMERA EQUIPMENT IS EXCLUDED PURSUANT TO THE CONTRACT OF CARRIAGE**

An air carrier may lawfully exculpate itself for liability for articles of exceptional value, like cameras or camera equipment, considering the problems encountered in the carriage of such items and the passenger's alternative means of transporting these items. See Tishman and Lipp, Inc., v. Delta Air Lines, 275 F. Supp. 471, 478 N. 5 (S.D. N.Y. 1967), aff'd, 413 F. 2d 1401 (2d Cir. 1969); Blair v. Delta Airlines, Inc., 344 F. Supp. 360, 365 (S.D. Fla. 1972), aff'd, 477 F.2d 564 (5th Cir. 1973).

Defendant's Contract of Carriage specifically excludes Defendant from liability for cameras and camera equipment. Partida Aff., Ex. 5. The Fifth Circuit has recently decided, on facts remarkably similar to the facts before this Court, that exclusions to liabilities contained in the Contract of Carriage are valid so long as the liability limiting provisions are "sufficiently plain and conspicuous" so as to give the passenger reasonable notice of the meaning of the provisions. Jewelers at *8.

The Fifth Circuit adopted the Ninth's Circuit's "reasonable communicativeness" analysis to be utilized to determine whether an air carrier has provided adequate notice to the passenger of its baggage exclusions and limitation provisions. Jewelers at *8; Deiro, 816 F.2d at 1364. Under the analysis adopted by the Fifth Circuit, the court must first examine the passenger ticket or airbill to determine whether the ticket or airbill provides reasonable notice to the passenger or shipper. Second, the court is to consider the conditions under which the baggage was checked or the shipment was made. Jewelers at *8; Deiro, 816 F.2d at 1364.

In Jewelers, the carrier had no liability as a matter of law for three lost packages containing jewelry because the airbill governing the transportation of the jewelry incorporated by

reference the carriers "Service Guide" (similar to a contract of carriage) which stated that the carrier was not liable for the loss of "jewelry." <u>Jewelers</u> at *8.  The court declined to hold the carrier liable for the lost jewelry even though the Plaintiff had declared the high value of the articles and paid an additional fee.  <u>Jewelers</u> at *3.  Utilizing the first step of the <u>Deiro</u> analysis, the Fifth Circuit examined the airbill and found it contained a "conspicuous notice" on the front directing the customer to terms and conditions printed on the reverse side of the airbill.  Also, on the reverse side of the airbill was a notice that the carrier's Service Guide was incorporated by reference and governed the transportation of the articles.  <u>Id</u>.  That Service Guide excluded the carrier's liability for shipped jewelry.  <u>Jewelers</u> at *8.

Mr. Casas' American Airlines ticket, like the airbill in <u>Jewelers</u>, contains the conspicuous notice that the air transportation and baggage handling is "Subject to Conditions of Contract on Reverse Side."  Partida Aff. ¶ 6.  The reverse side of Mr. Casas ticket also included notice that conditions of carriage were incorporated by reference, were a part of the "Contract of Carriage" and that Mr. Casas should make sure he had received the important legal notices including the "Notice of Incorporated Terms" and the "Notice of Baggage Liability Limitations."  Partida Aff. ¶ 5.  These notices of incorporated terms and baggage limitations were included in the ticket that was provided to Mr. Casas.  Partida Aff. ¶¶, 8, 9.

It is not necessary that Defendant prove that Mr. Casas had actual notice of these exclusions.  <u>Jewelers</u> at *8("carrier need not demonstrate that the customer had actual knowledge of the liability limitations"); <u>see also</u> <u>Stevenson v. American Airlines, Inc.</u>, 24 Av.Cas ¶ 17,341, 17,342 (E.D. Pa. 1992).  The acceptance and use of the ticket by the passenger establishes "an agreement prima facie valid, which limited the carrier's liability."  <u>Jewelers</u> at *8; <u>see</u> <u>Deiro</u> 816

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>
<u>**AND BRIEF IN SUPPORT THEREOF**</u> - **Page 12**

F.2d at 1366 (citing New York Cent. & H.R.R. Co. v. Beaham, 242 U.S. 148, 151-52 (1916)). An allegation by Mr. Casas that he failed to read the notices does not overcome the "presumption of assent." Beaham, 242 U.S. at 151-152.

The second factor that the Fifth Circuit found dispositive in Jewelers was the consideration of the conditions under which the air transportation was made. The Jewelers court, again citing Deiro, examined whether the customer was familiar with the ticket and had the time and incentive to study the provisions of the ticket and whether there were any other notices that the passenger might receive outside the ticket. Deiro 816 F.2d at 1364. In holding that the carrier had no liability for the lost jewelry, the court noted that plaintiff was an experienced shipper and had "ample opportunity" to inspect the airbill. Jewelers at *8. Similarly, Mr. Casas' ticket was issued 12 days prior to the incident flight and Mr. Casas admits that he had the ticket in his possession at least 7 days prior to the incident flight. Mr. Casas also admits that he had the opportunity to review the ticket and its contents. Mr. Casas, an attorney who has been practicing law for over 10 years, also admitted that he was aware that his ticket contained information that might affect his legal rights.

Additionally, there were numerous other notices of the exclusions from liability that were provided to Mr. Casas. There were numerous notices of the camera exclusions on the airport signs at the ticket counters at the Valley International Airport where Mr. Casas checked his bags on August 29, 1996 and at the Orlando International Airport where Mr. Casas checked his bags on the incident flight on September 3, 1996. Ortega Aff. p. 2, Ex. 1; Munzon Aff. p. 3, Ex. 3. Additionally, the notices were available to Mr. Casas in his ticket envelope. Partida Aff. ¶ 12, Ex. 11.

The Jewelers court, in finding that properly communicated exclusions of liability are valid and binding upon the passenger, followed the longstanding law of the Second Circuit which has upheld exclusions from liabilities for valuable items for over 40 years. Jewelers at *8. Tishman, 413 F.2d at 1407; Lichten, 189 F.2d at 942.

Further, the notice provisions provided by the air carrier in Deiro are identical to those provided to Mr. Casas. Compare Deiro, 816 F.2d at 1362-63 with Partida Aff. Ex. 2 ("Passenger Ticket and Baggage Check - Subject to Conditions of Contract"); Ex. 5 ("Notice - Conditions of Contract"); Ex. 7. ("Notice of Baggage Liability Limitations"); Ex. 8 ("Condition of Carriage"); Ex. 9 (Airport Sign-Notice of Baggage Limitations). Mr. Casas ticket states the following: "Passenger Ticket and Baggage Check - Subject to Conditions of Contract." The Deiro court stated that the message sought to be conveyed by such a notice is clear. Deiro, 816 F.2d at 1364-65. Similarly, the "Notice of Baggage Liability Limitations" issued with Mr. Casas' ticket was held conspicuous and understandable. Id. at 1365. Accordingly, the uncontroverted summary judgment evidence establishes that Defendant clearly meets the first part of the "reasonable communicativeness" test under Deiro because the ticket here is identical to the ticket issued in Deiro. Deiro, 816 F.2d at 1364-65.

The second aspect of Deiro requires that the circumstances surrounding the purchase and retention of the ticket be considered, including the "time and incentive [the passenger had] to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." Id. at 1364. Defendant submits that the summary judgment evidence closely parallels the evidence set forth in Deiro upon which the court relied to find, as a matter of law, that the second prong of the "reasonable communicativeness" test was met.

First, Plaintiff's ticket was issued on August 22, 1996 and Plaintiff admits receiving the ticket by August 28, 1996. Plaintiff did not depart Orlando, Florida until September 3, 1996, and was in possession of his ticket at least 12 days before the incident flight. This time afforded Plaintiff more than ample time to inspect his ticket. See Deiro, 816 F.2d at 1365 (passenger receipt of ticket nine days before flight provided ample opportunity to become familiar with liability limitations). Plaintiff knew the value of the video camera and equipment and a strong incentive existed for him to review and study his ticket to determine the terms of his Contract of Carriage. As in Deiro, the receipt of a ticket several days before departure provided Plaintiff with ample opportunity to become familiar with the liability provisions "especially when [the passenger] knew in advance that he would be shipping valuable baggage." Id. at 1365.

Additionally, Plaintiff testified that he was aware that there was printed material on the ticket that affected his legal rights. In Deiro, the passenger merely acknowledged that he was aware that there was "a whole bunch of stuff printed on the back of the ticket." Id. In response, the Deiro court stated that the passenger's statement evidenced his knowledge of the existence of written provisions or notices in the ticket. Id. Another important factor is the existence of a liability limitation notices posted at the Airport. Exhibit 9 to the Partida Affidavit is a notice provision posted at all American Airlines ticket counters including those at the Valley International Airport, the Dallas/Forth Worth International Airport, and the Orlando International Airport. Plaintiff testified that he checked his bags at the ticket counters at the Valley International Airport and the Orlando International Airport, thereby giving him an opportunity to see the notice. Plaintiff also admits that he is a seasoned air traveler and had previously flown on American Airlines.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF - Page 15**

Based upon the above analysis, and the uncontroverted summary judgment proof, Defendant reasonably communicated the exclusion of liability to Plaintiff. As a result, Plaintiff, in seeking damages for the loss of a video camera and equipment, is bound by his ticket and provisions in the Contract of Carriage. Accordingly, Defendant is entitled to summary judgment.

**D.   IN THE ALTERNATIVE, DEFENDANTS LIABILITY IS LIMITED TO $1,250 BY THE CONTRACT OF CARRIAGE**

Based upon the above discussion of Defendant's communication of the exclusions to liability for camera equipment, and the uncontroverted summary judgment proof, Defendant also reasonably communicated the $1,250.00 liability limitation to Plaintiff. As a result, Plaintiff, in seeking damages for the loss of a video camera and equipment is bound by the ticket and provisions in the Contract of Carriage which limit American's liability, if any, to $1,250.00. Defendant is therefore entitled to partial summary judgment limiting its liability, if any, to $1,250.00.

**E.   IN THE ALTERNATIVE, DEFENDANT'S EXCLUSIONS AND LIMITATIONS ARE INCORPORATED BY REFERENCE PURSUANT TO FEDERAL STATUTE AND FEDERAL REGULATION**

Pursuant to federal statute and regulations, an air carrier may incorporate by reference in its "ticket or written instrument any term of the contract for providing interstate air transportation." 49 U.S.C. § 41706 (West Ann. 1996); 14 C.F.R. 253.4(a)(1996)("a ticket or other written instrument that embodies a contract of carriage may incorporate contract terms by reference (i.e.: without stating their full text)"). The regulations dealing with notice on the terms of the Contract of Carriage "preempt any State requirements on the same subject." 14 C.F.R. § 253.1 (1996).

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT THEREOF - Page 16**

The ticket Mr. Casas received included the "Notice of Incorporation by Reference" sufficient to satisfy the notice requirements of 14 C.F.R. § 253.5. Indeed, the language of Defendant's notice of incorporated terms mirrors that of the federal regulations. Compare Partida Aff., Ex. 6 with 14 C.F.R. § 253.5. Therefore, Defendant can and did incorporate by reference the exclusion from liability for camera equipment contained in its Conditions of Carriage and Defendant is excluded from liability for the loss of the camera equipment by federal statute and regulations. Partida Aff., Ex. 8.

Additionally, federal regulations prescribe notices and liability limits regarding domestic baggage liability. See 14 C.F.R. § 254. This regulation allows air carriers, upon notice to the passenger, to limit liability for any non-excludable items to $1,250. See 14 C.F.R. § 254.4. Tishman, 413 F.2d at 1405. These regulations require that the air carrier give the passenger "conspicuous written material included on or with its ticket" of the notice of "any monetary limitations on its baggage liability to passengers." 14 C.F.R. § 254.5. Defendant included with its ticket issued to Mr. Casas a "Notice of Baggage Liability Limitations" which conforms with the federal regulations. Partida Aff., Ex. 7. Therefore, and in the alternative, any liability of Defendant is limited to $1,250 per federal statute and regulation.

**F.    PLAINTIFF'S ALLEGATIONS OF NEGLIGENCE AND BREACH OF CONTRACT DO NOT OBVIATE THE ENFORCEABILITY OF THE LIABILITY LIMITATIONS**

Plaintiff asserts that because of the fact that he allegedly told an American Airline agent in Orlando of the contents of his bag and that his original flight from Dallas/Fort Worth to Harlingen on September 3, 1996 departed without him, any applicable liability limitations were canceled. Defendant submits that Plaintiff's argument is misplaced. Defendant's Conditions of

Carriage expressly state that Defendant does not guarantee simultaneous delivery of a passenger and his baggage to the final destination. Partida Aff., Ex. 8. More importantly, however, the key issue under <u>Jewelers</u> and <u>Deiro</u> is whether the passenger is given, by the ticket and the surrounding circumstances of its purchase, reasonable notice of the exclusions and liability limitations if a bag or property may be lost. No case cited by Plaintiff requires an air carrier give notice of all of the potential reasons for lost baggage, e.g. improper labeling of a bag, misrouting or misdelivery of the bag, or a missed connection. The courts which have analyzed the validity of the liability limitations focus on the reasonableness of the notice of the liability limits, not notice of an alleged reason or circumstance which may ultimately cause the loss.

That Defendant had no legal obligation of informing Plaintiff of the possible reasons for the loss of his luggage is confirmed when one considers that the validity of Defendant's excluded or limited liability does not depend on Defendants' conduct. The cases clearly hold that the negligence of the carrier does not legally matter and that the limitation is unquestionably valid. See <u>Deiro</u>, 816 F.2d at 1366; <u>Tishman</u>, 275 F.Supp. at 480. Moreover, the gross negligence or willful misconduct by a carrier's employee does not obviate the liability limitation. <u>Id.</u>; <u>Neal v. Republic Air Lines</u>, 605 F. Supp. at 1149. Likewise, the liability limitations are not even affected if an employee of the carrier stole the goods. As the <u>Tishman</u> court held:

> Even gross negligence or proof that an employee of the Defendant actually stole the jewelry would not suffice to render the tariff inapplicable.

<u>Tishman</u>, 275 F. Supp. at 480; <u>see also</u> <u>Shapiro v. United Air Lines</u>, 22 Av.Cas ¶ 17,394, 17,397 (E.D.N.Y. 1989). Necessarily, in light of this authority, Plaintiff's mere assertion that he told Defendant he was checking camera equipment and the fact that he was not able to return to Harlingen until September 4, 1996 does not and cannot obviate the liability limitations.

**G.** **TO THE EXTENT THAT PLAINTIFFS ALLEGATIONS ARE BASED ON STATE LAW, THOSE CLAIMS ARE EXPRESSLY PREEMPTED BY FEDERAL LAW.**

Section 105 of the Federal Aviation Act, commonly referred to as the Airline Deregulation Act, contains an express preemption clause precluding a state from enacting or enforcing a "law, regulation or other provisions having the force and effect of law related to a price, route or service of an air carrier." 49 U.S.C. § 41713(b)(1)(West 1997.) The Fifth Circuit has defined "services" to include such items as "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995)(emphasis added). Therefore, to the extent that any of Plaintiff's allegations of negligence, bailment or res ipsa loquitor rely on state law or statute, those claims are expressly preempted by Federal law.

## VI.

## REQUEST FOR ORAL ARGUMENT

Defendant respectfully requests oral argument pursuant to the Southern District's Local Rule 6(F)(1).

## VII.

## CONCLUSION

Defendant submits that the question before the Court is to be determined under federal law. It is also a question of law as to whether the notice of the exclusions and liability limitations, not the possible reasons for a potential loss of luggage, were reasonably communicated to the Plaintiff. The summary judgment proof in this case meets the test of Jewelers and Deiro and, accordingly, Defendant submits that the result here should be the same

as those cases. Accordingly, Defendant is entitled to final summary judgment as a matter of law and Plaintiff should take nothing or, in the alternative, Defendant's liability is limited to $1,250.00.

## VIII.

## <u>PRAYER</u>

WHEREFORE, Defendant requests that this matter be set for a hearing with notice to Plaintiff, and that on final hearing of this Motion, the Court enter judgment that the Plaintiff take nothing from Defendant and that the Defendant recover its costs from Plaintiff; or alternatively, that Defendant's liability to Plaintiff is expressly limited to $1,250.00, and for further relief, at law, or in equity, to which Defendant is justly entitled to receive.

Respectfully submitted,


JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas  75202
(214) 953-6000
(214) 953-5822 (Telecopy)


By: _____
     **David T. Moran**
     State Bar No. 17358700
     Attorney-In-Charge
     **James D. Struble**
     State Bar No. 19425700

ATTORNEYS FOR DEFENDANT
AMERICAN AIRLINES, INC.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been served upon the Plaintiff's counsel of record by certified mail, return receipt requested, on this ⟨handwritten⟩ day of August, 1997.

Heriberto (Eddie) Medrano
Attorney at Law
1101 West Tyler
Harlingen, Texas  78550

David T. Moran

1616360.01
101490.38

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT THEREOF - Page 21**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| HECTOR A. CASAS | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | B-96-207 |
| AMERICAN AIRLINES, INC., | § | |
| | § | JURY |
| DEFENDANT. | § | |

## AFFIDAVIT OF JEANETTE MUNZON
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| STATE OF FLORIDA | § |
| | § |
| COUNTY OF ORANGE | § |

I, JEANETTE MUNZON, am over 18 years of age, I have never been convicted of a crime involving moral turpitude and I am fully competent to make this Affidavit. I am a Customer Service Agent at the American Airlines ticket counter, Orlando International Airport and have held that position since September, 1995 and as such have the authority to make this Affidavit. I have general knowledge of all matters relating to passenger check-in procedures including baggage check procedures. I also have personal knowledge of American Airlines limitations and exclusions to liability for checked and unchecked baggage. I have personal knowledge of the facts stated herein, all of which are true and correct.

On September 3, 1996 I was working at the American Airlines ticket counter at the Orlando International Airport. I have reviewed the "Open Tracer", a true and correct copy of which is attached hereto as Exhibit 1 to this Affidavit, and incorporated herein for all purposes. I have also

reviewed Casas' Deposition Exhibit 5 a true and correct copy of which is attached as Exhibit 2 and incorporated herein for all purposes. Exhibit 2 includes a copy of a boarding pass for Mr. Casas issued on September 3, 1996 for travel from the Orlando International Airport to the Dallas/Fort Worth International Airport. Exhibits 1 and 2 contain references to the baggage Mr. Casas checked on September 3, 1996. The agent identification "MCO443W" appears on both Exhibits 1 and 2. This is my agent identification number and was so on September 3, 1996. Based upon Exhibit 1 and 2 I believe that I was the agent at the American Airlines ticket counter at the Orlando International Airport that checked Mr. Casas' baggage on September 3, 1996.

When a passenger checks baggage I am required by the Federal Aviation Administration, and it is my regular habit and custom, to ask passengers various security related questions. These questions include whether the passengers have received any gifts from strangers, whether they packed their own luggage and whether they have left their luggage unattended for any length of time. Additionally, I am required and it is my regular habit and custom, to advise passengers that they should not accept gifts or packages after leaving the ticket counter and before boarding their flight. It is not required, and it is not my normal custom or habit, to inquire as to what the contents of a passenger's bag may be.

It is my normal custom and habit to, if advised by a passenger that they are carrying an excludable item, to advise them of the limitations of liability. If, for instance, I were to be advised that a passenger was attempting to check camera equipment I would inform the passenger that American Airlines assumes no liability for the camera equipment contained in the checked baggage, that it would be best for the passenger to either carry the bag on their person aboard the aircraft and, if that was not possible, to take the camera equipment out of the bag and carry it on their person.

I have no recollection of Mr. Casas or any passenger on September 3, 1996 telling me that he was checking a bag which contained camera equipment.

Located at the American Airlines ticket counter at the Orlando International Airport are several signs containing notices to passengers. A true and correct copy of the sign at the American Airlines ticket counter is attached hereto as Exhibit 3 and incorporated herein for all purposes. Located on the signs at the ticket counter are various notices including American Airlines policies regarding baggage limitations and exclusions.

Included on all of these signs are the following notices:

1. "Baggage Liability . . . liability for loss, delay or damage to baggage will be limited as indicated below, unless a higher valuation for the checked baggage has been declared and additional charges paid at check-in. Excess valuation may not be declared on certain types of articles."

2. "Domestic - Travel wholly within the 50 states, Puerto Rico and the U.S. Virgin Islands.

   Baggage Liability - limited to $1250 per passenger. May be less on some airlines.

   NO liability for camera equipment, jewelry, cash, electronic equipment, or other similar valuable items contained in checked or un-checked baggage. Passenger should personally carry these items, as well as medications or prescriptions."

I have read the preceding Affidavit and I certify and swear that the instruments attached to this Affidavit in Support of Defendant's Motion for Summary Judgment as Exhibits 1, 2 and 3 are

true and correct copies of the originals, and I swear every statement made is upon my personal

knowledge and is true and correct.

_____

JEANETTE MUNZON
Affiant


      SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public, this 08 day of

_____August_____, 1997.

_____

Notary Public, State of ~~Texas~~ FLORIDA

Karen M. Walsh

_____

Print Notary Name Here

[SEAL]

My Commission Expires:

31 July 1997



KAREN M. WALSH
MY COMMISSION # CC 398526
EXPIRES: July 31, 1998
Bonded Thru Notary Public Underwriters

101490/1614319.1