

United States District Court
Southern District of Texas
FILED

SEP 04 1997

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

HECTOR A. CASAS

VS.  CIVIL CAUSE NO. B-96-207

AMERICAN AIRLINES, INC.

### PLAINTIFF'S RESONSE TO DEFENDANT'S MOTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Hector A. Casas, Plaintiff herein, by and through his Attorney of Record, Heriberto Medrano, and hereby makes and files this his response and reply to Defendant American Airlines' various pleadings and motions filed on or about August 14, 1997 and would show unto this Honorable Court as follows:

I.

### PLAINTIFF OBJECTS TO DEFENDANT'S AMENDED ANSWER

Plaintiff objects to Defendant's Amended Answer as Defendant did not request nor receive leave of Court in which to file same in violation of the Federal Rules of Civil Procedure.

II.

### PLAINTIFF OBJECTS TO AND DISPUTES DEFENDANT'S CHARACTERIZATIONS OF "UNDISPUTED FACTS"

Contrary to Defendant's Assertions, Plaintiff's claim against Defendant is <u>not</u> based solely upon the lost camera and equipment. Plaintiff's claim is also based on a lost piece of baggage and another that was scratched and marred.

Plaintiff had only made one other trip to Orlando Florida on American.

1

Plaintiff did not receive his ticket at least seven days prior to his flight. Excess valuation was never offered by Defendant to Plaintiff. Indeed, Defendant's employee Mr. Partida, in his own affidavit, expressly states that declared excess valuation was <u>not</u> available for certain excluded items, such as jewelry, cash, and camera equipment. Partida's affidavit on page 4. See also page 5 of Partida's affidavit, " Excess valuation may not be declared on certain types of articles."

Plaintiff was <u>not</u> provided a copy of an affidavit by a Mr. Ortega, referred to by Defendant and thus cannot address objections to same.

Pursuant to Federal Rule of Civil Procedure 10 ( c ), Plaintiff hereby adopts by reference his affidavit attached as Exhibit "A" and other documents and summary judgment evidence filed in support of this pleading.

III.

## RESPONSE TO DEFENDANT'S ANSWER TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S REPLY TO DEFENDANT'S OWN MOTION FOR SUMMARY JUDGMENT

Summary of Plaintiff's response: As a matter of established black letter law, American Airlines defense to Plaintiff's suit (i.e., that it is entitled to rely on certain language contained in its contract of carriage which by its terms exonerates itself from all liability for certain categories of baggage or goods) is invalid and void as a matter of law, <u>regardless of whatever notice Plaintiff had</u>. (emphasis added).

The <u>Jewelers</u> case is not applicable to the case at bar, because it did <u>not</u> involve passengers. The C.F.R. quoted below and applicable in this case, was <u>not</u> applicable or addressed by the <u>Jewelers</u> case.

Plaintiff also argues that there is a fact question as to whether he received required

2

notice, thus precluding Summary Judgment for Defendant. Further, because American admits it would not offer, and did not have available to offer, excess valuation insurance, it cannot avail itself of the $1,250.00 liability limitation.

1. Title 14 C.F.R. 254. 4 states:

> "In any flight segment using large aircraft, or any flight segment that is included in the same ticket as another flight segment that uses large aircraft, <u>an air carrier Shall Not limit its liability</u> for provable direct or consequential damages resulting from the disappearance of, damage to, or delay in delivery <u>of a passenger's personal property, including baggage,</u> in its custody to <u>an amount less that $1,250.00 for each passenger.</u> (emphasis added).

Title 14 C.F.R. 254.5 states:

> "In any flight segment using large aircraft, or on any flight segment that is included in the same ticket as another flight segment that uses large aircraft, an air carrier shall provide to passengers, by conspicuous written material included on or with its ticket, either:
>
> (a) Notice of any monetary limitation on its baggage liability to passengers; or
> (b) The following notice: "Federal rules require any limit on an airline's baggage liability to be at least $1,250.00 per person."

2. The only cases cited by Defendant which interpret this CFR is <u>Feature Enterprises v. Continental Airlines,</u> 745 F. Supp. 199 D (1990). The <u>Feature</u> case is a well reasoned balanced opinion based on the applicable CFR, and Third and Ninth Circuit precedent. The Court rightly holds that an airline may <u>not</u> totally exclude or exonerate itself from liability, altogether it may limit its liability to $1,250.00 (the amount applicable in the CFR) provided it has given the passenger reasonable notice of the liability limitation and the opportunity to purchase a higher fare or insurance to cover excess losses.

The <u>Feature</u> case involved the loss (theft by third persons) of approximately $142,000.00 in jewelry. Continental defended the suit and moved for summary judgment, as does Defendant herein, on certain language contained in its contract of carriage which,

3

by its terms, exonerated it altogether from liability for certain enumerated valuables. Defendant, American Airlines, raises the same defenses Continental raised in Feature. The District Court correctly held that the CFR quoted above applied, and admitted of no exceptions. That is, the airline could limit its liability, but it could not as a matter of law, exempt itself from liability.

Defendant cites no case which overrules Feature. (emphasis added). Indeed, a review of Shepard's shows that Feature has been followed by other courts, and never overruled. (emphasis added).

Instead, Defendant claims that the decision lacks precedential value, because according to Defendant, the Feature Court ignored prevailing Second Circuit precedent. Defendant does not discuss the case law from the Third and Ninth Circuit which invalidates its position and conveniently overlooks the fact that the two cases it cites, (Lichten, 1951 and Tishman, 1969), did not discuss the CFR quoted above, which did not come into existence until 1984, 15 years after the cases were decided and on which Defendant erroneously relies on. See further, First Pennsylvania Bank v. Eastern Airlines, 731 F. 2d 1113, 1117 FN. 5 (3 rd Cir. 1984), discussing Judge Jerome Frank's dissent in Lichten, " 'The weight of authority now supports Judge Frank's view, as Judge Hufstedler held in Klicker v. Northwest Airlines, Inc. 563 F. 2d 1310, 1313-14 (9th Cir. 1977): We decline to adopt the Lichten rationale because it is flatly wrong.' " (emphasis added). Lichten and Tishman are clearly inapplicable or distinguishable. They are not controlling precedent.

Indeed one article has noted:

"[A]ir carriers continued to invoke exculpatory clauses as a defense to

4

liability even when the CAB ruled that a particular exculpatory provision was unlawful. * * * The CAB had previously ruled that the exculpatory tariffs in question were unlawful." Citing, Hughes Air Corp., 40 Fed. Reg. 1121, 1122 & n.5 (1975).

The Effect of Post-Deregulations Court Decisions on Air Carriers Liability For Lost, Delayed or Damaged Baggage, 55 J. Air L. & Com. 653, 677, 678 (1989).

The article continues: "Today, with a return to federal common law principles, exculpatory provisions are, once again unenforceable." Id., at p. 678. (emphasis added).

The article notes the severity with which the Lichten decision has been criticized, and rarely followed.

> "See, e.g., Klicker v. Northwest Airlines, 563 F.2d 1310, 1313-14 (9th Cir. 1977) ("Lichten makes little sense from the standpoint of ordinary rules of statutory construction and none when the legislative history of the Interstate Commerce Act and Civil Aeronautics Act is read."); Odom v. Pacific N. Airlines, 393 P.2d 112, 116 (Alaska 1964) (refusing to adopt the Lichten rationale); Davis v. Northeast Airlines, 362 A. 2d 208, 209-10 (N.H. 1976); Note, Air-Carrier Tariff Provisions Limiting Liability for Negligence, 70 HARV.L. REV. 1282, 1287-88 (1957) ("[I]t's doubtful whether a carrier should be permitted to exempt itself from all liability for negligence, since the elimination of liability might reduce the deterrents to negligent conduct."); Recent Cases, Air Law-Tariff Provision Filed with CAB Frees Carrier From Liability for Negligent Loss of Jewelry in Passenger's Baggage, 65 HARV.L.REV. 341, 342-43 (1951) (analyzing the Lichten reasoning and posing several potential errors in the court's reasoning); Recent Developments, 21 FORDHAM L.REV. 64 (1952) (noting that Congress never allowed non air carriers to exempt themselves completely from liability, the article explains: "Congress may not be deemed to have intended, by remaining silent, to permit air carriers to enforce a contract provision for exemption of liability uniformly forbidden to all other types of carriers in the interstate scheme.").

Id., FN.114.

The article correctly concludes that these exculpatory clauses are unlawful and unenforceable.

Additionally, the Jewelers Court did not cite Lichten or Tishman for the proposition

5

asserted by Defendant here, (i.e., that airlines can exonerate themselves for all liability). Rather these cases were cited for the proposition that civil actions against air carriers for lost and damaged goods arose under federal law; and, federal common law governed the liability of air carriers for lost or damaged goods. <u>Jewelers v. APX, Inc.,</u> 1997 WL 395254 (5th Cir. 1997), p.6, FN. 11 and FN 12, respectively.

This conclusion is further buttressed by <u>Wackenhut Corp. v. Luppert,</u> 609 So. 2d 1304 (Fla. 1992) which was discussed by Defendant at p. 8 of its response to Defendant's Motion for Summary Judgment.

<u>Wackenhut</u> supports Plaintiffs' position; it <u>does not</u> stand for the position asserted by Defendant. (emphasis added).

<u>Wackenhut</u> was a case where Plaintiff lost valuable jewelry. Plaintiff sued. Defendant relied in defense, as does Defendant herein, on contract of carriage language limiting its liability. The contract of carriage had a specific exclusion that it was not responsible for "jewelry, cash, camera equipment, or other similar valuable items. . ." <u>Wackenhut</u> at p. 1307.

Despite this exclusionary language, the Court granted Plaintiff judgment citing the <u>Feature</u> case. The Court also stated that a bailment was created, and that Defendant was negligent when it lost Plaintiff's baggage and so was liable to and granted judgment for Plaintiff in the amount of $1,250.00. The <u>Wackenhut</u> Court <u>did not</u> cite either <u>Lichten</u> or <u>Tishman</u>, further proof of their inapplicability to this case. (emphasis added).

Defendant took a statement in <u>Wackenhut</u> out of context to support its position. Defendant states:

> "The Department of Transportation has found that an airline's exposure

6

for the loss of valuable items would 'add significantly to airlines' costs thereby resulting in higher ticket fares!" Defendant's Response to Plaintiff's Motion for Summary Judgment at p. 8.

What the Court in <u>Wackenhut</u> actually stated was:

"The Department of Transportation, to whom Congress transferred authority to regulate aviation, has determined that **without baggage liability limitations**, an airline's exposure for the loss of valuable items, such as jewelry, would add significantly to airline's costs, thereby resulting in higher ticket fares. <u>Wackenhut,</u> at p. 1307. (emphasis added).

The significance of the foregoing cannot be understated. Here, the Court had before it a case in which (like the case at bar) the contract of carriage contained <u>an absolute exclusion</u> of liability for lost jewelry. (emphasis added). Yet, it ruled that the Defendant was liable to Plaintiff in the sum of $1,250.00.

The Court's reference to the Department of Transportation's findings does not validate total liability exclusions, but rather validates (for prudential economic reasons) liability limitations, that the airlines are only liable for the first $1,250.00. This limitation amply protects carriers.

This conclusion is further buttressed by Federal Regulations cited by Defendant at p. 10 of its response.

Defendant states: "[T]here is nothing in the rule-making history of 14 C.F.R. § 254 which reflects an intention by the drafters to prohibit air carriers from continuing to exclude certain items from liability as they had done for many decades." 49 Fed Reg. 5065-71 (1984). Review of 49 Fed Reg. 5065-71 (1984) shows that it does not stand for the proposition asserted by Defendant, but that it too, supports Plaintiff's position. At issue were questions of notice requirements, and liability limitations. Comments were filed by among other, the Air Transport Association which

7

represented Defendant American. P. 5065. There is evidence to suggest that American also filed its own comments. See p. 5070 under the heading Miscellaneous.

The Civil Aeronautics Board ruled to increase airlines minimum liability limitation from $750.00 to $1,250.00. p. 5066. It also ruled that these liability limitations would apply to Small Aircraft Operations, and amounted to less than 10 cents per passenger loss. p. 5067.

The board stated:

> "In addition, travel on the small carriers, in combination with larger ones, will be more attractive, and they may gain some business, to the extent that prospective passengers realize that any baggage losses will be fully compensated as they are on a large aircraft. p. 5070 (emphasis added).

This language undercuts Defendant's assertion. Interestingly, comments were received by Jewelry Companies p. 5065. The board stated that Jewelry Companies supported an increase in the level of liability limitation. p. 5068.

If, as Defendant claims, airlines were routinely excluding liability for lost jewelry, Jewelry Companies would not be petitioning for an increase in liability limits. It would be a moot issue, since there would be no liability in the first place.

Further, the comments of board member Morales are quite instructive.

> "It has became clear to me that even in the hey-day of regulation, the liability limit was viewed as a way to establish an amount below which carriers could not unreasonably limit the responsibility they assumed for passenger baggage." p. 5070. (emphasis added).

3. Defendant argues that the case of Jewelers v. APX, Inc., 117 F3d. 992, 1997 WL 395254 (5th Cir. 1997) is dispositive of Plaintiff's suit as a matter of law, and thus Defendant is entitled to summary judgment on the basis of certain language contained

8

in its contract of carriage. Defendant's reliance on Jewelers is misplaced. Indeed, the Jewelers case actually supports Plaintiff.

The Jewelers Court expressly held, if not expressly created, " a federal cause of action [which] exists against an interstate air carrier that negligently losses a shipment." Jewelers at FN.15.

The reason, however, Defendant erroneously thinks that Jewelers supports its position is because in Jewelers, the Court held that certain language contained in that Defendant's airbill, which stated it was not liable for lost jewelry, was a valid contractual exclusion which precluded Plaintiff's action.

Plaintiff respectfully submits that Jewelers is factually distinguishable and legally inapplicable to the case at bar. Jewelers involved a **shipment of jewelry**; it **did not** involve the transportation of passengers and their baggage. (emphasis added). Thus, there was no occasion to consider or apply Title 14 CFR Part 254, which by its own terms, is not applicable in the Jewelers scenario. Thus, the court reached the conclusion that the standard airbill provisions that hold the shipper harmless was valid. Jewelers at p.7.

The other cases relied on by Defendant are likewise inapplicable. In Diero for example, the Court upheld Defendant's claim that it had provided the required notice of its limits of liability (in that case $750.00), and thus was only liable to Plaintiff for $750.00, even though Plaintiff's loss greatly exceed that amount. The Diero decision does not validate what Defendant is trying to do here, that is, exonerate itself from all liability. (emphasis added). Indeed, the Diero decision, also cited in Feature and Jewelers, stands for the proposition "that carriers are allowed to limit their liability in the contract of carriage".

9

Jewelers at p.7.

> "[C]arriers may partially limit their liability for injury, loss, or destruction of baggage. . ." Diero v. American Airlines, Inc., 816 F. 2d 1360, 1365 19th Cir. 1987. (emphasis added). The case says limit, **not exclude** its liability. (emphasis added).

Further, Plaintiff himself is not seeking more that the statutory limit of $1,250.00 for his personal losses.[1]

Another case cited by Defendant is Blair v. Delta Airlines Inc., 344 F. Supp. (S.D. Fla. 1972). Contrary to Defendant's assertions, it does not overrule Odom v. Pacific Northern Airlines. It concluded that Odom is factually distinguishable from the case at bar.

Odom v. Pacific Northern Airlines, 393 p. 2d 112 (S. Ct. Alaska 1964) held, citing numerous cases, that an airline cannot completely exonerate itself from liability. See further, Vogelsang v. Delta Airlines, Inc., 193 F. Supp. 613 (1961) carrier liable for lost jewelry. To the same effect Mao v. Eastern Airlines, Inc., 310 F. Supp. 844 (1970), defendant was liable for lost jewelry. Chambers Associates v. TWA, 533 F. Supp. 426 (1982), Defendant liable for lost camera equipment. Chambers cited Tishman, yet held that Defendant was liable.

The Neal case, like many of the cases cited by Defendant, is a shippers case, thus the applicable CFR did not come into play, and the case is not applicable to the case at bar.

4. Plaintiff further submits that there is a fact issue on the issue of notice which precludes granting of summary judgment for Defendant. See Gluckman v. American Airlines, 844 F. Supp. 151 (S.D.N.Y. 1994). Interestingly, Gluckman cites Feature with

---

[1] Plaintiff is entitled however to his actual damages up to $1,250.00, plus reasonable attorney's fees and costs of Court.

10

approval. Plaintiff further contends that any liability limitations were terminated when his connecting flight departed before he could even get on. See <u>Navarro v. American Airlines,</u> 142 N.Y.S. 2d 725 (1955).

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that its objections to Defendant's Motion for Summary Judgment, be sustained and that this Court deny all of Defendant's motions and grant Plaintiff's motions, striking Defendant's affirmative pleadings, and granting Plaintiff summary judgment on the liability issues and maintain jurisdiction for purposes of class certification.

Respectfully submitted,

Law Offices of
Heriberto Medrano
1101 West Tyler
Harlingen, Texas 78550
Telephone (956) 428-2412
Facsimile  (956) 428-2495

_/s/ Heriberto Medrano_
Heriberto Medrano
State Bar No. 13897800

STATE OF TEXAS
COUNTY OF CAMERON

## COUNTER - AFFIDAVIT OF PLAINTIFF

Before me, the undersigned authority personally appeared Hector A. Casas, a person well known to me and upon his oath stated and deposed as follows:

1. "My name is Hector A. Casas. I am over 21 years of age and I am fully competent to execute the foregoing affidavit. The facts stated herein are within my personal knowledge true and correct.

2. "At no time was I ever orally notified or advised of American Airlines', or any other Airlines for that matter, limitations of liability. I was never told or informed that American Airlines assumes no liability for camera equipment contained in checked baggage and I was not informed of the possibility of purchasing a higher fair or insurance.

3. "The luggage/baggage I checked in was simply that, luggage. One of those pieces happened to contain camera equipment.

4. "The ticket jacket in this case is constructed in such a way which does not allow the passenger to read anything about supposed liability limitations without having to tear the glued pages apart.

5. "I did not have the passenger ticket for at least 7 days.

6. "The signs at the airports are for the most part placed in such a way as to make them difficult, if not impossible, to read.

7. "Since I have never had any lost luggage, and because I have always been of the opinion that these types of exclusions are invalid, there was no need for me to familiarize myself with them.

8. "Further, affiant sayeth, not."

_Hector A. Casas_
HECTOR A. CASAS

SWORN AND SUBSCRIBED TO BEFORE ME, the undersigned authority by said Hector A. Casas on this 28th day of August, 1997.

_Claudia Figueroa_
CLAUDIA FIGUEROA
Notary Public in and for
THE STATE OF TEXAS

[Notary Seal: CLAUDIA FIGUEROA, NOTARY PUBLIC, State of Texas, Comm. Exp. 01-19-2000]

## CERTIFICATE OF SERVICE

I, Heriberto Medrano, hereby certify that a true and correct copy of the above and foregoing **Plaintiff's Response to Defendant's Motions** has this 28th day of August, 1997 sent by regular mail to counsel of record as follows:

David T. Moran
JACKSON & WALKER, L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202

_____
Heriberto Medrano