IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED
MAR 02 1998
Michael N. Milby, Clerk of Court

HECTOR A. CASAS

VS.  CIVIL CAUSE NO. B-96-207

AMERICAN AIRLINES, INC.

### PLAINTIFF'S RESONSE TO DEFENDANT'S OBJECTIONS MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Hector A. Casas, Plaintiff herein, by and through his Attorney of Record, Heriberto Medrano, and hereby makes and files this response to Defendant's Objection to the Magistrate Judge's Report and Recommendation and by way of this response Plaintiff would show:

I.

Plaintiff objects to Defendant's pleading as more than 10 days have elapsed since Defendant's receipt of the Magistrate's Order, and is therefore untimely and should be struck. However, in an abundance of caution, Plaintiff makes the following substantive response.

II.

Plaintiff submits, for the reasons discussed below, that the Magistrate Judge's conclusions of law are correct, and should be adopted in toto.

III.

Summary of Plaintiff's response: As a matter of established black letter law, American Airlines' defense to Plaintiff's suit (i.e., that it is entitled to rely on certain language contained in its contract of carriage, which by its terms

1

exonerates itself from all liability for certain categories of baggage or goods) is invalid and void, <u>regardless of whatever notice Plaintiff had</u>. (emphasis added).

The <u>Jewelers</u> case is not applicable to the case at bar, because it did <u>not</u> involve passengers and their lost luggage . The C.F.R. quoted below dealing specifically with a "passenger's lost luggage" was not addressed by the Court in the <u>Jewelers</u> case, because that case involved "lost freight " no "passenger" was involved.

Plaintiff also argues that because American admits it would not offer, and did not have available to offer, excess valuation insurance, it cannot avail itself of the $1,250.00 liability limitation.

1. Title 14 C.F.R. 254. 4 states:

> "In any flight segment using large aircraft, or any flight segment that is included in the same ticket as another flight segment that uses large aircraft, <u>an air carrier **Shall Not** limit its liability</u> for provable direct or consequential damages resulting from the disappearance of, damage to, or delay in delivery <u>of a passenger's personal property, including baggage</u>, in its custody to <u>an amount less that $1,250.00 for each passenger.</u> (emphasis added).

Title 14 C.F.R. 254.5 states:

> "In any flight segment using large aircraft, or on any flight segment that is included in the same ticket as another flight segment that uses large aircraft, an air carrier shall provide to passengers, by conspicuous written material included on or with its ticket, either:
>
> (a) Notice of any monetary limitation on its baggage liability to passengers; or
> (b) The following notice: "Federal rules require any limit on an airline's baggage liability to be at least $1,250.00 per person."

2. The only cases cited by Defendant which interpret this CFR is <u>Feature Enterprises Continental Airlines,</u> 745 F. Supp. 198 (D.C. N.Y. 1990). The

2

Feature case is a well reasoned and balanced opinion based on the applicable CFR, and Third and Ninth Circuit precedent. The Court rightly holds that an airline may **not** totally exclude or exonerate itself from liability altogether; it may limit its liability to $1,250.00 (the amount applicable in the CFR) provided it has given the passenger reasonable notice of the liability limitation and the opportunity to purchase a higher fare or insurance to cover excess losses.

The Feature case involved the loss (theft by third persons) of approximately $142,000.00 in jewelry being carried by a passenger in his luggage. Continental defended the suit and moved for summary judgment, as does Defendant herein, on certain language contained in its contract of carriage which, by its terms, exonerate it altogether from liability for certain enumerated valuables checked in by a passenger in its luggage.

Defendant, American Airlines, raises the same defenses Continental raised in Feature. The District Court correctly held that the CFR quoted above applied, and admitted **no exceptions.** That is, the airline could limit its liability, but it **could not as a matter of law**, exempt itself **totally** from liability. This conclusion is supported by modern case law, including cases from the Third and Ninth Circuit, First Pennsylvania Bank vs. Eastern Airlines, 731 F 2d 1113 (37d Cir. 1984); and Klicker v. Northwest Airlines, Inc., 563 F 2d 1310 (9th Cir. 1977).

Defendant cites **no case** which overrules Feature. Indeed, a review of Shepard's shows that Feature has been followed by other courts, and **never** overruled. (emphasis added). See, for example 609 So. 2d 1304, 1308, 167 misc. 2d 891, 892; 638 N.Y.S. 2d 906, 907.

3

Instead, Defendant claims the decision lacks precedential value, because according to Defendant, the Feature Court ignored prevailing Second Circuit precedent. Defendant does not discuss the case law from the Third and Ninth Circuit which invalidates its position and conveniently overlooks the fact that the two cases it cites, (Lichten, 1951 and Tishman, 1969), did not discuss the CFR quoted above, which did not come into existence until 1984, 15 years after these cases were decided, and on which Defendant erroneously relies on. See further, First Pennsylvania Bank v. Eastern Airlines, 731 F. 2d 1113, 1117 FN. 5 (3 rd Cir. 1984), discussing Judge Jerome Frank's dissent in Lichten. " 'The weight of authority now supports Judge Frank's view, as Judge Hufstedler held in Klicker v. Northwest Airlines, Inc. 563 F. 2d 1310, 1313-14 (9th Cir. 1977): We decline to adopt the Lichten rationale because it is flatly wrong.' " (emphasis added). Lichten and Tishman are clearly inapplicable or distinguishable. They are not controlling precedent.

Indeed one article has noted:

> "[A]ir carriers continued to invoke exculpatory clauses as a defense to liability even when the CAB ruled that a particular exculpatory provision was unlawful. * * * The CAB had previously ruled that the exculpatory tariffs in question were unlawful." Citing, Hughes Air Corp., 40 Fed. Reg. 1121, 1122 & n.5 (1975).

The Effect of Post-Deregulations Court Decisions on Air Carriers Liability For Lost, Delayed or Damaged Baggage, 55 J. Air L. & Com. 653, 677, 678 (1989). The article continues: "Today, with a return to federal common law principles, exculpatory provisions are, once again unenforceable." Id., at p. 678. (emphasis added). The article notes the severity with which the Lichten decision has been

4

criticized, and rarely followed.

> "See, e.g., <u>Klicker v. Northwest Airlines,</u> 563 F.2d 1310, 1313-14 (9th Cir. 1977) ("<u>Lichten</u> makes little sense from the standpoint of ordinary rules of statutory construction and none when the legislative history of the Interstate Commerce Act and Civil Aeronautics Act is read."); <u>Odom v. Pacific N. Airlines,</u> 393 P.2d 112, 116 (Alaska 1964) (refusing to adopt the <u>Lichten</u> rationale); <u>Davis v. Northeast Airlines,</u> 362 A. 2d 208, 209-10 (N.H. 1976); Note, Air-Carrier Tariff Provisions Limiting Liability for Negligence, 70 HARV.L. REV. 1282, 1287-88 (1957) ("[I]t's doubtful whether a carrier should be permitted to exempt itself from all liability for negligence, since the elimination of liability might reduce the deterrents to negligent conduct."); Recent Cases, Air Law-Tariff Provision Filed with CAB Frees Carrier From Liability for Negligent Loss of Jewelry in Passenger's Baggage, 65 HARV.L.REV. 341, 342-43 (1951) (analyzing the <u>Lichten</u> reasoning and posing several potential errors in the court's reasoning); Recent Developments, 21 FORDHAM L.REV. 64 (1952) (noting that Congress never allowed non air carriers to exempt themselves completely from liability, the article explains: "Congress may not be deemed to have intended, by remaining silent, to permit air carriers to enforce a contract provision for exemption of liability uniformly forbidden to all other types of carriers in the interstate scheme."). <u>Id.,</u> FN.114.

The article correctly concludes that these exculpatory clauses are unlawful and unenforceable.

Additionally, the <u>Jewelers</u> Court did not cite <u>Lichten</u> or <u>Tishman</u> for the proposition asserted by Defendant here, (i.e., that airlines can exonerate themselves for all liability). Rather these cases were cited for the proposition that civil actions against air carriers for lost and damaged goods arose under federal law; and, federal common law governed the liability of air carriers for lost or damaged goods. <u>Jewelers v. APX, Inc.,</u> 1997 WL 395254 (5th Cir. 1997), p.6, FN. 11 and FN 12, respectively.

This conclusion is further buttressed by <u>Wackenhut Corp. v. Luppert,</u> 609 So. 2d 1304 (Fla. 1992) which was discussed by Defendant at p. 8 of its response to

5

Defendant's Motion for Summary Judgment.

<u>Wackenhut</u> supports Plaintiffs' position; it <u>does not</u> stand for the position asserted by Defendant.

<u>Wackenhut</u> was a case where Plaintiff lost valuable jewelry. Plaintiff sued. Defendant relied in defense, as does Defendant herein, on contract of carriage language limiting its liability. The contract of carriage had a specific exclusion that it was not responsible for "jewelry, cash, camera equipment, or other similar valuable items..." <u>Wackenhut</u> at p. 1307.

Despite this exclusionary language, the Court granted Plaintiff judgment citing the <u>Feature</u> case. The Court also stated that a bailment was created, and that Defendant was negligent when it lost Plaintiff's baggage and so was liable and granted judgment for Plaintiff in the amount of $1,250.00. The <u>Wackenhut</u> Court <u>did not</u> cite either <u>Lichten</u> or <u>Tishman</u>, further proof of their inapplicability to this case.

Defendant took a statement in <u>Wackenhut</u> out of context to support its position. Defendant states:

> "The Department of Transportation has found that an airline's exposure for the loss of valuable items would 'add significantly to airlines' costs thereby resulting in higher ticket fares!" Defendant's Response to Plaintiff's Motion for Summary Judgment at p. 8.

What the Court in <u>Wackenhut</u> actually stated was:

> "The Department of Transportation, to whom Congress transferred authority to regulate aviation, has determined that without baggage liability limitations, an airline's exposure for the loss of valuable items, such as jewelry, would add significantly to airline's costs, thereby resulting in higher ticket fares. <u>Wackenhut,</u> at p. 1307. (emphasis added).

6

The significance of the foregoing cannot be understated. Here, the Court had before it a case in which (like the case at bar) the contract of carriage contained <u>an absolute exclusion</u> of liability for lost jewelry. Yet, it ruled that the Defendant was liable to Plaintiff in the sum of $1,250.00.

The Court's reference to the Department of Transportation's findings does not validate total liability exclusions, but rather validates (for prudential economic reasons) liability limitations, that the airlines are only liable for the first $1,250.00. This limitation amply protects carriers.

This conclusion is further buttressed by Federal Regulations cited by Defendant at p. 10 of its response.

> Defendant states: "[T] here is nothing in the rule-making history of 14 C.F.R. § 254 which reflects an intention by the drafters to prohibit air carriers from continuing to exclude certain items from liability as they had done for many decades." 49 Fed Reg. 5065-71 (1984).

Review of 49 Fed Reg. 5065-71 (1984) shows that it does not stand for the proposition asserted by Defendant, but that it too, supports Plaintiff's position. At issue were questions of notice requirements, and liability limitations. Comments were filed by among other, the Air Transport Association which represented Defendant American. P. 5065. There is evidence to suggest that American also filed its own comments. <u>See</u> p. 5070 under the heading <u>Miscellaneous.</u>

The Civil Aeronautics Board ruled to increase airlines <u>minimum</u> liability limitation from $750.00 to $1,250.00. p. 5066. It also ruled that these liability limitations would apply to Small Aircraft Operations, and amounted to less than 10 cents per passenger loss. p. 5067.

The board stated:

"In addition, travel on the small carriers, in combination with larger ones,

7

will be more attractive, and they may gain some business, to the extent that prospective passengers realize that <u>any baggage losses will be fully compensated</u> as they are on a large aircraft. p. 5070 (emphasis added).

This language undercuts Defendant's assertion. Interestingly, comments were received by Jewelry Companies p. 5065. The board stated that Jewelry Companies supported an increase in the level of liability limitation. p. 5068.

If, as Defendant claims, airlines were routinely excluding liability for lost jewelry, Jewelry Companies would not be petitioning for an increase in liability limits. It would be a moot issue, since there would be no liability in the first place.

Further, the comments of board member Morales are quite instructive.

> "It has became clear to me that even in the hey-day of regulation, the liability limit was viewed as a way to establish <u>an amount below which carriers could not unreasonably limit</u> the responsibility they assumed for passenger baggage." p. 5070. (emphasis added).

3. Defendant argues that the case of <u>Jewelers v. APX, Inc.,</u> 117 F3d. 992, 1997 WL 395254 (5th Cir. 1997) is dispositive of Plaintiff's suit as a matter of law, and thus Defendant is entitled to summary judgment on the basis of certain language contained in its contract of carriage. Defendant's reliance on <u>Jewelers</u> is misplaced. Indeed, the <u>Jewelers</u> case actually supports Plaintiff.

The <u>Jewelers</u> Court expressly held, if not expressly created, " a federal cause of action [which] exists against an interstate air carrier that negligently looses a shipment." <u>Jewelers</u> at FN.15.

The reason, however, Defendant erroneously thinks that <u>Jewelers</u> supports its position is because in <u>Jewelers,</u> the Court held that certain language contained in that Defendant's "freight" airbill, which stated it was not liable for lost jewelry, was

8

a valid contractual exclusion which precluded Plaintiff's action.

Plaintiff respectfully submits that <u>Jewelers</u> is factually distinguishable and legally inapplicable to the case at bar. <u>Jewelers</u> involved a **<u>shipment of jewelry</u>**; it **<u>did not</u>** involve the transportation of passengers and their baggage. (emphasis added). Thus, there was no occasion to consider or apply Title 14 CFR Part 254, which by its own terms, is not applicable in the <u>Jewelers</u> scenario. Thus, the court reached the conclusion that the standard airbill provisions that hold the shipper harmless was valid. <u>Jewelers</u> at p.7.

The other cases relied on by Defendant are likewise inapplicable. In <u>Diero</u> for example, the Court upheld Defendant's claim that it had provided the required notice of its limits of liability (in that case $750.00), and thus was only liable to Plaintiff for $750.00, even though Plaintiff's loss greatly exceed that amount. The <u>Diero</u> decision does not validate what Defendant is trying to do here, that is, exonerate itself from <u>all</u> liability. (emphasis added). Indeed, the <u>Diero</u> decision, also cited in <u>Feature</u> and <u>Jewelers,</u> stands for the proposition "that carriers are allowed to limit their liability in the contract of carriage". <u>Jewelers</u> at p.7.

> "[C]arriers <u>may partially limit</u> their liability for injury, loss, or destruction of baggage. . ." <u>Diero v. American Airlines, Inc.,</u> 816 F. 2d 1360, 1365 19th Cir. 1987. (emphasis added). The case says <u>limit,</u> **<u>not exclude</u>** its liability. (emphasis added).

Further, Plaintiff himself is not seeking more that the statutory limit of $1,250.00 for his personal losses.[1]

Another case cited by Defendant is <u>Blair v. Delta Airlines Inc.,</u> 344 F. Supp. (S.D. Fla. 1972). Contrary to Defendant's assertions, it does not overrule

---

[1] Plaintiff is entitled however to his actual damages up to $1,250.00, plus reasonable attorney's fees and costs of Court.

9

Odom v. Pacific Northern Airlines. It concluded that Odom is factually distinguishable from the case at bar.

Odom v. Pacific Northern Airlines. 393 p. 2d 112 (S. Ct. Alaska 1964) held, citing numerous cases, that an airline cannot completely exonerate itself from liability. See further, Vogelsang v. Delta Airlines, Inc., 193 F. Supp. 613 (1961) carrier liable for lost jewelry. To the same effect Mao v. Eastern Airlines, Inc., 310 F. Supp. 844 (1970), defendant was liable for lost jewelry. Chambers Associates v. TWA, 533 F. Supp. 426 (1982), Defendant liable for lost camera equipment. Chambers cited Tishman, yet held that Defendant was liable.

The Neal case, like many of the cases cited by Defendant, is a shippers case, thus the applicable CFR did not come into play, and the case is not applicable to the case at bar.

IV.

Plaintiff further objects to Defendant's argument under IV B wherein it erroneously concludes that an air carrier "may lawfully exclude liability for certain valuable items it refuses to accept as passenger baggage" for the reasons that Defendant accepted Plaintiff's baggage. Thus, Defendant's discussion is irrelevant.

Plaintiff further objects to Defendant's discussion under IV B of "fragile goods" as this was never raised in the Court below.

Plaintiff further objects to any suggestion that Defendant can zero out its liability by reference to 14 C.F.R. § 253.5 (a general regulation) for the reason that Defendant's argument is precluded by the more specific 14 C.F.R.

10

254 which speaks directly to liability limitations.

V.

Plaintiff objects to Defendant's discussion under IV B2 which artificially classifies "two general classes of baggage". The applicable C.F.R. 14 C.F.R. 254 does not recognize this distinction. Further, Defendant has cited no case decided after the enactment of 14 C.F.R. 254 which recognizes this distinction. Further, Defendant does not explain or discuss what it can decide on its own, to exclude from liability from what it cannot. If American's position is correct, and taken to its logical conclusion, there would be nothing to prevent it from excluding all liability for goods, so long as it gave notice in its contract of carriage. Further, since American assumes no liability for valuables whether checked in or carried by the passenger, Defendant's argument about two classes of baggage is irrelevant.

VI.

Plaintiff further objects to Defendant's discussion of applicability of tariffs for the reason that Defendant did not rely on tariffs in the Court below, and further because discussion of tariffs is irrelevant and inapplicable. See Plaintiff's discussion at p. 4 above citing authority that tariffs are no longer available to preclude liability in these types of cases. See, The Effect of Post-Deregulation Court Decisions Air Carriers Liability for Lost, Delayed or Damaged Baggage, 55 J. Air L. & Com. 653, 677, 678 (1989). Citing, Hughes Air Corp., 40 Fed. Reg. 1121, 1122 & n.5 (1975).

11

## VII.

For reasons stated in the body of Plaintiff's response, Plaintiff objects to Defendant's discussion under IV C of Plaintiff's position. The Defendant grossly mischaracteristerizes Plaintiff's argument and authority. Contrary to Defendant's assertion that "Plaintiff apparently attempts to rely on two isolated cases", Plaintiffs has cited the text of the applicable C.F.R.'s, the Federal Register, several cases (state and federal), several law review articles, opinions from the general counsel of the Department of Transportation, and statements from American itself, all of which support Plaintiff's position. Defendant, on the other hand, cites and relies on one case which is legally and factual distinguishable, and inapplicable.

The Magistrate's conclusions of law are in all things correct.

## VIII.

Plaintiff objects to any request to supplement the record. <u>See, Lavespere v. Niagra Mach & Tool Works, Inc.</u>, 910 F 2d 167 (5th Cir. 1990), stating "it would be a mistake to infer from our decision that attorneys practicing in this circuit may now ignore deadlines for the submission of evidence within impunity.

The cross-motions for summary judgment and reply and responses to same were on file long before the hearing before the Magistrate. The hearing was held October 15, 1997. The Magistrate's decision was handed down February 6, 1998. There is no need, and Defendant has made no showing, of why it should be allowed to supplement at this late date in contravention of the applicable rules.

12

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court adopt the Magistrate Judge's proposed order in toto.

Respectfully submitted,

Law Offices of
Heriberto Medrano
1101 West Tyler
Harlingen, Texas 78550
Telephone (956) 428-2412
Facsimile   (956) 428-2495


_____
Heriberto Medrano
State Bar No. 13897800

13

# CERTIFICATE OF SERVICE

I, Heriberto Medrano, hereby certify that a true and correct copy of the above and foregoing **Plaintiff's Response to Defendant's Objections Magistrate Judge's Report and Recommendation** this 25th, day of February, 1998 sent by regular mail to counsel of record as follows:

David T. Moran
JACKSON & WALKER, L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202

_____
Heriberto Medrano