63

United States District Court
Southern District of Texas
FILED

**SEP 1 6 1998**

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

HECTOR A. CASAS   *
    Plaintiff,   *
        *
  VS.      *   CIVIL ACTION NO. B-96-207
        *
AMERICAN AIRLINES, INC.,   *
    Defendant.   *

### PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

TO THE HONORABLE JUDGE OF SAID COURT;

  Comes now Hector A. Casas, Plaintiff, by and through his attorney of record, Heriberto 'Eddie' Medrano, and files this Reply To Defendant's Response In Opposition to Plaintiff's Motion For Class Certification and would state the following in support thereof:

### Defendant Owes Plaintiff An Apology

1.   Defendant refers to Plaintiff's Motion For Class Certification as "judicial blackmail". Plaintiff's counsel takes great offense to this mischaracterization of his request for a 'class action', especially in light of the fact that it was Plaintiff's counsel who proposed that any discovery or discussion concerning 'class certification' be <u>stayed</u> until the District Court ruled on the validity of Plaintiff's own <u>individual</u> claim for damages. It was in a true spirit of cooperation and judicial economy that Plaintiff framed the question before the District Court to be limited only as to his particular loss of his video camera by American Airlines, who completely and absolutely disclaimed any liability for having lost it and repeatedly refused to compensate Plaintiff for its own negligence and loss.

1

2.      Plaintiff did not file a Motion For Class Certification until the District Court

entered an Order approving the Magistrate's Report and Recommendation and

issued a <u>Judgment</u> declaring American Airline's 'Notice of Exclusion' defense, to

exempt itself from liability for the loss of cameras and other "excluded items", to

be invalid and in violation of the requirements imposed on it by 14 CFR 254

specifically.

3.      <u>The question of Defendant's liability has been settled</u>. Subsequent

discovery related to the issue of 'class certification' revealed more than 7,500

other passengers, over just a 36 month period (a potential Class of 15,000

affected persons exists), also received the same treatment from American

Airlines. That American Airlines has now been caught as having done the same

thing to thousands and thousands of other passengers similar to Plaintiff, does

not justify it making disparaging remarks towards Plaintiff's counsel. American

Airlines should apologize to Plaintiff's counsel and retract its baseless and

unwarranted statement in its pleadings.

        For the sake of brevity, Plaintiff incorporates as part of this Reply, Plantiff's

Answer and Supplemental Answer to Defendant's Motion To Dismiss For Lack of

Subject Matter Jurisdiction as well as <u>Plaintiff's Response to Defendant's</u>

<u>Motions</u>.

### Subject Matter Jurisdiction

4.      Plaintiff addresses the Court's attention to the U.S. Supreme Court's ruling

in <u>Caterpillar v. Williams</u>, 482 U.S. 386, 390, 107 S.Ct. 2425, 2429, 96 L.Ed.2d

318 (1987) which stated, "Federal jurisdiction exists *when a federal question is*

2

*presented on the face of a plaintiff's properly pleaded complaint.*" (emphasis added) ) Plaintiff's complaint invokes 14 CFR 254 as well as federal common law as the basis for his right to seek damages form Defendant, an air carrier, for its loss of his personal property i.e. his baggage containing a video camcorder and video equipment. Clearly Plaintiff's complaint raises a federal question involving the interpretation and application of a specific federal statute as well as federal common law. *The question of whether Federal Jurisdiction exists is not an issue in this case.*

### Defendant ~~Misrepresents~~ The Purpose Of 14 CFR 253.5(b)(1)

5.      Contrary to Defendant's statements in its pleadings, 14 CFR 253.5(b)(1) does <u>NOT</u> authorize American Airlines, nor any other carrier, to exclude itself from the liability requirements imposed by 14 CFR 254. American has again taken certain statements completely out of context.

6.      Plaintiffs asks the Court to read for itself 14 CFR 253. Under the heading of "Purpose", 14 CFR 253.1 states:

> "The ***purpose*** *of this rule* is to set <u>*uniform disclosure requirements*</u>, which <u>preempt any State requirements on the same subject,</u> for terms incorporated by reference into contract of carriage for scheduled service in interstate and overseas passenger air transportation." (emphasis added)

This entire federal rule, 14 CFR 253, deals with the wording needed to satisfy the <u>'Notice' requirements</u> for terms incorporated by reference in the contracts of carriage<u>*, because of lack of space on the passenger's ticket for all such terms*</u>. Under this rule, and by airlines' adherence to same, state causes of action arising from a <u>lack of adequate notice</u> of those incorporated terms are preempted. However, 14 CFR 253 <u>DOES NOT</u> **validate** automatically any

3

contract term or condition a carrier incorporates by reference in its Conditions of Carriage, simply because that carrier publishes same therein.

7.     That this preemption of state 'notice' requirements was the sole reason and scope of the rule, was made clear by the CAB's comments published in the Federal Register, Vol. 47, No. 224, Friday, Nov. 19, 1982.

> "This rule takes a Federal approach to *the structure of the contract notice* that must be provided."

> "The Board believes that for these reasons there should *be one standard for notice of contract terms for airlines in all States*, and that it has ample statutory authority to issue rules to that end."

8.     That the Board NEVER intended to preempt passengers' rights to bring causes of action under State contract remedies or other federal statutes and common law, was also made clear by the Board's discussion of the Minnesota Attorney General's request for just such a clarification.

> "Most commenters supported Federal preemption by rule in this area (the structure of the notice requirement in the Contract). One commenter suggested that the Board *make explicit in the rule its intent to preempt State regulation in this matter*. This has been done in Sec. 253.1, Purpose.

> "The Minnesota Attorney General *suggested that the preemption be more specific* so as *not to preempt State contract remedies and 'plain-language' statutes*. **The Board agrees with this suggestion** with respect to contract remedies, and has clarified the fundamental provision in Sec. 253.4 by stating that *the enforcement aspects of the rule* **are in addition to *other* remedies at law (i.e. 14 CFR 254).**

> "...far from totally occupying the field of unfair and deceptive practices, *this rule is designed to preempt the State **only in one narrow area***: the **notice** that must be given to passengers in cases where an air carrier incorporates some of its contract terms by reference." (emphasis added) Id.

### 14 CFR 253 Left The Determination Of The Validity Of Incorporated Terms Up To The Courts

4

9.    As proof the CAB did NOT intend to authorize or validate the legality or

validity of contractual terms incorporated by reference in an air carriers Contract

of Carriage, the CAB's comments in the same Federal Register state that:

> "The effect and the **validity of State law relating to other aspects of the
> contracting process**, including State 'plain-language' statutes*, will
> depend on the detailed provisions of those laws*, and cannot be
> determined in advance within the scope of this proceeding."

> "The courts will still have an important role to play in determining whether
> the notice given was conspicuous, and if so whether the **term itself is
> proper**." (emphasis added) Id.

10.    In fact, the CAB *specifically* made the provisions contained in 14 CFR

253(b)(1) subject and subservient to *the mandatory domestic baggage limitations*

*of 14 CFR 254.* This deference to the minimum mandatory liability provisions of

14 CFR 254 was clearly stated by the CAB's statements published in the Federal

Register of Friday, February 10, 1984, Vol. 49, No. 29.

**"CIVIL AERONAUTICS BOARD**

**14 CFR Part 253**
[Economic Reg; Amdt. No. 4; Docket 41443; ER – 1375]

**Terms of Contract of Carriage**

**AGENCY**: Civil Aeronautics Board.
**ACTION**: Final rule._____

**SUMMARY**: The CAB is conforming its rules to
allow air carriers to incorporate their domestic
baggage liability rules by reference. These terms
may include limits on the air carrier's liability for loss,
damage, or delay of goods and baggage, including
fragile and perishable goods. ***This rule is consistent
with the final domestic baggage rule, ER – 1374,
that was adopted today.*** This action is taken in
response to a petition by the Air Transport Association.

DATES: Adopted: December 23, 1983.
Effective: April 10, 1984.

5

**SUPPLEMENTARY INFORMATION:** *This rule is Adopted for the reasons discussed in ER – 1374, which was adopted today.*" (Emphasis Added)

11.     The *"domestic baggage rule, ER – 1374"* the CAB makes reference to that *"was adopted today"*, is in fact 14 CFR 254 – Domestic Baggage Liability, [Economic Reg.; Docket 41443; **ER – 1374**]. What highlights even more the fact that the CAB was making the notice requirements of *253 subservient and subject to the baggage liabilities of 254* is the fact that its passage of 253 and 254 occurred *on the same day*, and in fact are discussed on the <u>two adjoining pages</u> of the same Federal Register. (Exhibit 1) Clearly Defendant's statement that 14 CFR 253 allows it to ignore the minimum mandatory liability provision of 14 CFR 254 is wrong.

### Defendant Cites Obsolete And Never Implemented Statutes

12.     In quoting from a Federal Register dated November 24, 1982 (Defendant's Exhibit C), Defendant has misrepresented to the Court that this 1982 *proposed draft* of 14 CFR 254 was in fact enacted into law by the CAB. This never occurred.

13.     Plaintiff encloses a copy of the Federal Register of Friday, February 10, 1984, Vol. 49, No. 29, which tracks the history of the CAB's drafting, and issues discussed, in enacting the final rule titled 14 CFR 254 Domestic Baggage Liability, which Plaintiff relies on in his cause of action, adopted Dec. 23, 1983 and effective April 10, 1984 up through today. (Exhibit 1)

14.     In that February 10, 1984 Federal Register, under the heading "Supplementary Information", the CAB states clearly that "the Board stayed the

6

February 22, 1983 effective date of the (proposed) rule …(the draft from which

Defendant quotes)."  The CAB stated that after further deliberation, it adopted a

notice of proposed rulemaking, [EDR – 458], to address concerns and to request

further comments on the applicability of the rule, the notice requirements and the

minimum liability limitations. Id. The CAB stated the <u>proposed draft requirements</u>

under EDR – 458, included:

> "1. Require carriers to **provide specific notice of liability limitations** to
> passengers **on or with their tickets** by either providing a statement of
> their actual monetary baggage liability limitation, or including a Board
> prescribed statement;
>
> "2. Require any carrier, regardless of aircraft size, to observe the Board's
> minimum baggage liability limits for all flight segments included on the
> same ticket with a large-aircraft segment;
>
> "3. Increase the minimum liability limitation to either $1,000 or $1,250; and
>
> **"4. Require carriers to provide excess valuation insurance
> coverage."** (emphasis added) Id.

15.    The CAB rejected the <u>1982 proposed draft</u> of 14 CFR 254 as stated under

EDR – 458, *which required air carriers to provide excess valuation insurance*

*coverage.* Instead, the Board drafted and enacted the still current version of 14

CFR 254 which imposes a mandatory minimum liability of at least $1,250 per

passenger for an air carrier's loss of or damage to that passenger's property,

including baggage. In ruling that the minimum mandatory $1,250 liability limit be

required of all air carriers, the Board stated,

> "The Board has decided at an earlier stage of the proceeding that *it would*
> *not* be *desirable* to *remove all restriction on carrier liability*
> *limitations*, with any limitation subject to common law and market
> pressures." Id.

7

CutePDF - www.tauto.com

The Board clearly states it is <u>not allowing air carriers to exempt themselves completely from liability</u> for the loss of a passenger's property. It thus imposed the figure of $1,250 as a minimum liability amount which air *carriers could <u>not</u> go under.*

16.     Further proof that the CAB does not allow an air carrier to exclude certain items from the mandatory minimum liability limits of 14 CFR 254, is found in the CAB's statement in the same Federal Register as to why the Board settled on a $1,250 monetary figure.

"The liability should not be a measure of the 'average amount of baggage' or the 'average claim,' but *<u>rather a figure set high enough to <b>cover all but unusual cases</b>, while protecting carriers <b>against extraordinary claims</b>.</u>*" Id. Clearly the intent of the CAB was to set a minimum mandatory liability limit of $1,250 per passenger for an air carrier's loss of that passenger's property, including luggage. This $1,250 figure, the Board reasoned*, was high enough to cover the great majority of passengers' lost baggage claims*, <u>while at the same time</u> *protecting air carriers for the loss of items in that baggage that exceeded the $1,250 cap on liability.* In other words, a passenger whose lost baggage contained an item whose value exceeded $1,250, was entitled to be compensated up to $1,250, as a matter of law, while the air carrier was protected and not liable for the value of the item over that $1,250 cap.

### Defendant Cites Obsolete And No Longer Applicable Cases

17.     The Magistrate Court as well as this District Court ruled that Defendant's citing of <u>Lichten v. Eastern Airlines, Inc.</u>, 189 F.2d 939 (2nd Cir. 1951), <u>Tishman & Lipp, Inc. v. Delta Air Lines, Inc.</u>, 275 F.Supp. 471 (S.D.N.Y. 1967) and <u>Blair v.</u>

8

Delta Air Lines, Inc., 344 F.Supp. 360 (S.D. Fla. 1972), are invalid and inapplicable cases because they preceded the passage and implementation of the Air Deregulation Act (hereafter ADA) and the minimum baggage liability limits imposed by 14 CFR 254, enacted in 1984.

18.    Defendant fails to cite or even discuss Klicker v. Northwest Airlines, Inc., 563 F.2d 1310, 1313 (9th Cir. 1977) which criticized and declared incorrect the holdings in Lichten and Tishman even prior to the enactment of the ADA and the mandatory liability limits imposed by 14 CFR 254. Nor does Defendant cite or discuss First Pennsylvania Bank v. Eastern Airlines, 731 F.2d 1113, 1117 (3rd Cir. 1984), which occurred post-ADA, and followed Klicker's teaching that Lichten and Tishman were incorrectly decided.

Defendant continues to cite cases whose rulings were NOT considered valid by other Courts, as well as this Court, and which did NOT factor in the subsequent changes in federal law i.e. 14 CFR 254.

## Defendant's Challenges To Class Certification

19.    **Standing, Typicality And Adequacy** – Defendant challenges Plaintiff's standing to serve as Class Representative for the 5,480 passengers (out of the 7,500 passengers identified by American Airlines). These 5,480 persons also suffered the loss of an "Excluded Item" but endorsed and cashed a check sent them as compensation for American Airlines' loss of their *Non-Excluded Items* which contained a "release" provision in the back.

Defendant does NOT challenge Plaintiff's standing to represent the other 2,000 passengers and thus Plaintiff pleads <u>in the alternative</u>, that this group of passengers be certified as a 'Class'.

20.    <u>Typicality</u> – This issue primarily concerns the legal and remedial grounds contained in the claims asserted by class members. A strong similarity of legal theories may satisfy the typicality requirement even if substantial fact distinctions exist between named and unnamed members. <u>Smith v. Travis Education District</u>, 791 F.Supp. 1179 (WD Tex 1992). Typicality does NOT mean the claims of all class members must be identical. <u>In re Catfish Antitrust Litigation</u>, 826 F.Supp. 1019, 1034 (ND Miss. 1993). Lastly, Defendant's representative stated at deposition that Plaintiff's claim was typical and was identified by Defendant as being one of the 7,500 passenger claims Defendant itself admitted it had denied liability and compensation involving 'Excluded Items'. It is these 7,500 passengers whom Defendant itself has identified as having been treated the same by American Airlines, which Plaintiff seeks to include in the 'Class'.

21.    <u>Standing & Adequacy</u> - Defendant's contention that passengers who endorsed and cashed these checks which covered only the loss of 'Non-Excluded Items', are now barred by the release from participating in the 'Class Action' with the 2,000 other passengers who did NOT receive and endorse such checks, is incorrect.

22.    Defendant's argument relies on a misrepresented _inference_ that the "release" printed on the back of these checks for "Non-Excluded" items also covers any claims passengers have to be compensated for lost "Excluded Items".

10

The validity of this inference is contradicted by the language contained in the form letters that American Airlines sent accompanying and explaining what the checks represented.

23.     In the letters Defendant drafted and mailed, American Airlines informed these 5,480 passengers that (1) it was completely and absolutely disclaiming any liability for its loss of the passenger's "Excluded Item", (2) it was NOT paying any compensation or making any adjustment to the passenger for its loss of that "Excluded Item", and (3) the enclosed check did <u>NOT</u> represent any admission of liability or compensation by American Airlines for its loss of that passenger's "Excluded Item".

24.     Exhibits # 4 through # 14, attached to Ms. Lisa Callahan's deposition, (cited as Exhibit 4 to Plaintiff's Motion For Class Certification) represent the eleven form letters, that accompanied the checks American Airlines issued to all 5,480 passengers who lost 'Excluded' as well as 'Non-Excluded' items, but only received partial compensation for 'Non-Excluded' items. All eleven form letters contain the following paragraph (with minor variations in wording) concerning American Airlines' decision to completely deny liability and withhold compensating passengers for its loss of their 'Excluded Items'.

> "Additionally, *there is **no adjustment** <u>we can make</u> for jewelry, cash, cameras, camera equipment, computers, computers software, business documents, books, medications, perishable or fragile items, electronic equipment or other similar valuable items* contained in checked or unchecked <u>baggage *and have deducted these from the total amount you claimed.* These are **specifically excluded** from our liability under the terms of our Conditions of Carriage</u>." (emphasis added) Exhibits 4 through 14 attached to Ms. Callahan's deposition (identified as Exhibit 4 in Plaintiff's Motion For Class Certification)

11

25.     By its letters accompanying the checks, Defendant makes it emphatically

clear the checks, and release, encompass only the loss of 'Non-Excluded' items.

A passenger's claim for loss of an 'Excluded Item' was completely rejected as a

matter policy by American Airlines, relying on its invalid and illegal 'Notice of

Exclusion' defense to liability. Similarly, Plaintiff also received a letter from

American Airlines containing the same disclaimer of liability language. Exhibit 15

attached to Callahan's deposition.

## Releases Are Invalid For Lack of Consideration

26.     Since Plaintiff's cause of action arises out of federal law i.e. federal

question jurisdiction, then federal law governs in determining the validity and

effect the alleged "releases" have concerning passengers' claims for

compensation for the loss of "Excluded Items". Locafrance U.S. Corp. v.

Intermodal Systems Leasing, Inc., 558 F.2d 1113, 1115 (2nd Cir. 1977).

27.     Therefore, in construing the scope of the release, the Court must give

effect to the intent of the parties, as demonstrated by the language of the release

itself and *the circumstances surrounding its execution*.  Zenith Radio Corp. v.

Hazeltine Research, Inc., 401 U.S. 321, 342-348 (1971). Clearly American

Airlines itself, restricted the breath and scope of the release to the loss of 'Non-

Excluded' items listed in passengers' lost baggage claims. It plainly stated in its

accompanying letter that the enclosed check DID NOT cover any loss of a

passenger's "Excluded Item". Because no consideration was given by American

Airlines for the loss of the 'Excluded Item', any claim that the release included the

passenger's claims regarding the "Excluded Item" is invalid for lack of consideration.

### Releases Are Invalid As A Matter Of Law

28.     The Supreme Court has stated that, "It is a well-established principle of federal law that *a promise to perform a preexisting duty* is NOT sufficient consideration and is grounds for setting aside a release." (emphasis added) Maynard v. Durham & Southern Railway Co., 365 U.S. 160, 164, 81 S.Ct. 561, 563, 5 L.Ed. 2d 486 (1991). As ruled on by the Magistrate and District Court as well as the Court in Feature Enterprises, American Airlines was required by law (14 CFR 254) to compensate Plaintiff, and all other similarly situated, for its loss of passengers' personal property (including both 'Excluded' and 'Non-Excluded' items) up to a limit of $1,250. The Court also ruled Plaintiff's right to compensation under this statute, could *NOT* be voided by American Airlines' 'Notice of Exclusion' defense.

29.     This Court's ruling confirms that all 5,480 passengers have a RIGHT, under 14 CFR 254, to be compensated by American Airlines' for loss of their 'Excluded Items' listed in their lost baggage claims to an amount up to $1,250. "Indeed, the 'majority of courts have taken the traditional and rigorously logical view' that a promisor's *mere performance of his legal obligation* is *not sufficient consideration* to support a contract, thereby nullifying the agreement" i.e. the release. (emphasis added) Calamari & Perillo, Contracts 149 (2nd Ed. 1977); General Intermodal Logistics Corp. v. Mainstream Shipyards & Supply, Inc., 748 F.2d 1071, 1075 (5th Cir. 1984).

13

30.     Because Defendant's check only compensated passengers for Non -Excluded Items *to which they were already entitled to under the law*, i.e. 14 CFR 254, Defendant's contention that passengers waived their right to participate in this 'Class' concerning 'Excluded Items' is invalid. Additionally, because the releases in question were an integral part of American Airlines' intentional policy to circumvent the mandatory baggage compensation requirements of 14 CFR 254, these releases are invalid and unenforceable as a matter of law. <u>Redel's, Inc. v. General Electric Company</u>, 498 F.2d 95, 100-101 (5th Cir. 1974).

31.     Lastly, Plaintiff contends these releases are in reality invalid and unconscionable adhesion contracts and thus unenforceable as a matter of law. The Fifth Circuit in <u>T. J. Stevenson & Co., Inc. v. 81,193 Bags of Flour</u>, 629 F.2d 338 (5th Cir. 1980), recognized that the "Contract of Carriage is normally an adhesion contract …(and that) the carrier's bargaining power is disproportionately greater than that of the usual private shipper."

## <u>Melong v. Micronesian Claims Commission</u>

32.     Defendant cites <u>Melong v. Micronesian Claims Commission</u>, 643 F.2d 10 (D.C. Cir. 1980) for the proposition that Plaintiff lacks standing to represent the 5,480 passengers who signed a release claimed by Defendant to encompass the non-compensated 'Excluded Items'. Although the <u>Melong</u> Court did rule that, "a release, as a settlement instrument, is not contra to public policy *and must be given effect <u>according to its terms</u>*", the Court *<u>also ruled</u>* that claims supposedly covered by the release *<u>can</u>* be 'judicially entertained' if the *release itself is found to be <u>**defective**</u>*.  (emphasis added) <u>Melong</u> at p. 15 citing <u>Rextrode v. Vinson</u>,

14

404 F.2d 830, 831 (D.C. Cir. 1968) and <u>Urbanizadora Santa Clara, S.A. v. United States</u>, 518 F.2d 574, 578 (Ct. Cl. 1975).

33.    Plaintiff has shown the purpose of the checks and what they represent, as defined by American Airlines' accompanying letters, do not include compensation for the loss of 'Excluded Items'. If there was no compensation (i.e. consideration) paid for these 'Excluded Items', there is no valid release of those claims.

Additionally, if all Defendant did was pay passengers compensation to which they were entitled to, the releases signed are invalid as a matter of law.

34.    <u>Melong</u>, unlike this case, <u>DID NOT</u> <u>involve *the enforcement of a statutory RIGHT to compensation for damages*</u>. The Court makes this important legal distinction as a basis for its holding.

> "A more difficult question is presented <u>with respect to those claimants who executed a release</u> after receiving a hearing from the Commission.
>
> Presumably, appellants' argument here is that if an 'adjudicatory' body determines that a **claimant is <u>*entitled*</u> *to a certain award***, that *award can not be made contingent* upon the <u>*execution of a release*</u> *from further liability*.
>
> Appellants themselves concede, however, that <u>the entire claims program was characterized by Congress as '*ex gratia*,'</u> in *which no individual claimant was **entitled** to any award*.
>
> Instead, the Commission made *a settlement offer* in exchange for a <u>release</u> that *barred the claimant from any other <u>proceeding that he might pursue</u> in support of his claim.*
>
> Furthermore, as noted above, <u>the Commission was **required** to execute releases under the Act</u>." (emphasis added) <u>Melong</u> at p. 16.

This <u>statutory entitlement to compensation</u> that the Court ruled Plaintiffs did NOT have in <u>Melong</u>, is what contradicts and invalidates Defendant's release argument in this case.

15

35.     In this case, ALL 7,500 passengers have a statutory right (i.e. they are **entitled**) to be compensated by American Airlines for its loss of their property up to a limit of $1,250 under 14 CFR 254. <u>Melong</u> states that, "if a· **claimant is <u>entitled</u> to a certain award**, that *award can <u>not be made contingent</u> upon the <u>execution of a release</u> from further liability*." Id. Defendant's release argument is invalid as a matter of law, even under the <u>Melong</u> case.

### Commonality And Predominance

36.     Defendant ignores the specific wording of F.R.C.P. 23(b)(3) which allows class certification where <u>*questions of law*</u> **OR** <u>*questions of fact*</u> are common to the class. Defendant in its responsive pleadings, does not address the <u>*five separate questions of law*</u> as well as the <u>*eight separate questions of fact*</u> stated in Plaintiff's Motion For Class Certification which are common to ALL 7,500 class members and which substantiate Plaintiff's compliance with this requisite to class certification.

37.     Defendant's argument that the 'releases' signed are a bar to 5,480 passengers' claims for damages under 14 CFR 254 is nullified by the fact that the passengers <u>*were* **entitled** *to as a matter of law*</u>, to the money they received from Defendant, as the Magistrate and District Court, as well as the <u>Feature Enterprises</u> Court ruled.

38.     The threshold for establishing commonality is not high. F.R.C.P. 23 requires only that resolution of common questions of law OR fact, will affect all or a substantial number of class members. <u>Shipes v. Trinity Indus</u>., 987 F.2d 311 (5th Cir. 1993). It is not necessary that all legal and factual questions be common

16

to the entire class. Watson v. Shell Oil Co., 979 F.2d 1014 (5th Cir. 1992).

Generally, if a common question of law exists, class action is appropriate to

eliminate numerous claims addressing the same legal issue. Califano v.

Yamasaki, 442 U.S. 481 (1979); Forbush v. J.C. Penney Co., 994 F.2d 1101 (5th

Cir. 1993). Commonality may arise from a requested remedy that is common to

the class. Smith v. Travis Country Education District, 791 F.Supp. 1179 (WD Tex

1992). Clearly, Defendant's challenge to commonality and its predominance in

this case is without merit.

### Defendant's Challenge To Class Management and Superiority

39.     Defendant's argument is centered on its contention that, "This is not a

case where each member of the class would automatically receive $1,*250 (or the*

*full amount of their alleged claim)*". Defendant's Response at p. 20. Defendant is

correct that 14 CFR 254 requires a passenger to prove the loss of or damage to

his/her property.[1]

### Defendant Is Estopped From Challenging
### The Claimed Loss Or Value Of 'Excluded Items'

40.     However, American Airlines is now estopped from challenging the validity

or value of these passengers' lost baggage claims concerning 'Excluded Items'

because it chose NOT to do so at the time these claims were submitted for

review and compensation. American Airlines promulgated strict procedures

governing the time period in which these claims had to be filed (thirty days from

the date of loss), as well as the requirement that each passenger fill out and

---

[1] 14 CFR 254 states, "… an air carrier shall not limit its liability for **provable** direct or consequential damages resulting from the disappearance of , damage to, … of a passenger's personal property …" (emphasis added)

submit a detailed three page 'Statement of Property Loss' and also requires a type of 'verification' of same by the passenger's signature.

41.    Instead of challenging the loss or the valuation of the 'Excluded Item', American Airlines chose to unilaterally and without exception, completely deny liability for its loss of these 'Excluded Items' (Callahan's deposition at p. 124) and made no further inquiry nor requested any further evidence from these passengers to substantiate their claims as to these 'Excluded Items'. The fact that American Airlines DID opt to challenge, compromise, adjust or request further proof from these same passengers as to the loss or value claimed concerning 'Non-Excluded' items, is indicative of American Airlines decision to waive making such inquiry as to the loss or value of 'Excluded Items'. Defendant is now estopped from challenging the validity of these claims as well as the damages claimed.

Additionally, Defendant WAIVED any challenge to Plaintiff's claimed amount of damages and the Magistrate as well as District Court entered Judgment awarding Plaintiff the full amount of his damages claimed.

## Defendant's Small Claims Court Argument Is Barred
## By Its Failure To Produce Proof Of Same During Discovery

42.    Defendant's contention that it has resolved similar claims filed by passengers in small claims courts before, is invalid and should be stricken as a matter of law since it specifically refused to tender such information in response to Plaintiff's request for production of same. Defendant cannot assert or rely on evidence it has intentionally refused to produce pursuant to a discovery request

under the rules. Plaintiff asks the Court to strike and not consider Defendant's assertions as to this matter.

### Defendant's Contention That Small Claims Courts Is More Efficient Ignores Reality As Well As The Purpose Of F.R.C.P. 23

43.     In the alternative, Plaintiff asserts that Defendant's contention that it would be more efficient and less costly to require ALL 7,500 passengers to each separately go file suit, instead of resolving this matter as a single 'Class Action' under F.R.C.P. 23, does not merit serious discussion. By their own pleadings, and by this Court's own rulings, all state causes of action concerning damages for lost baggage were preempted by federal law. (Plaintiff ,however, disagrees with this part of the Court's ruling)

44.     Because this issue concerns federal question jurisdiction, each passenger, like Plaintiff, has a right to file his action and exercise his constitutional right to due process in federal court. Neither Defendant, nor this Court, can deny these persons their right to due process in federal court. This is exactly why Class Actions were created by F.R.C.P. 23.

### Allison v. Citgo Petroleum

45.     Allison v. Citgo Petroleum, 1198 WL 244989 (5th Cir 1998), involved a suit under Title VII alleging race employment discrimination. Unlike the facts and law applicable in this case, the Plaintiffs in Allison were entitled to sue for compensatory and punitive damages up to a maximum of $300,000 per plaintiff under the revised Civil Rights Act of 1991. Here, each class member is limited to a maximum of $1,250 per passenger under the provisions of 14 CFR 254.

46.     In denying the class action, the Court held that the *nature of the damages*
requested by Plaintiffs, including compensation *for emotional and other*
*intangible injuries*, required litigating the *subjective differences* of each plaintiff's
case, which made them an 'individual' and not a 'class-wide' remedy. Such is
NOT the case here. There are no damages requested for emotional or other
intangible injuries, nor are there any differences in the class members' claims,
much less any subjective differences, which would prohibit this Court from
granting a 'class-wide' remedy.

47.     That the Court in <u>Allison</u> placed great weight on the real economics
involved in determining the ability of those Plaintiffs to individually hire attorneys
and incur the costs of filing one thousand separate suits is made clear in the
following excerpts from the decision. The Fifth Circuit stated:

> "It is important to remember that the class action device <u>exists primarily</u>, if
> not solely<u>, to achieve a measure of judicial economy, which benefits the parties</u>
> <u>as well as the entire judicial system</u>. It <u>preserves the resources</u> of both the courts
> and the parties by permitting issues affecting all class members to be litigated in
> an efficient, expedited, and manageable fashion." At p. 4.

> "Finally, the *most compelling rationale for finding superiority in a class*
> *action* – *the existence of a negative value suit* – <u>is missing in this case</u>. The
> relatively **substantial value of these claims (for the statutory maximum of**
> **$300,000 per plaintiff**) and the **availability of attorneys' fees** eliminate
> *financial barriers that might make individual lawsuits unlikely or unfeasible*."
> (emphasis added) <u>Allison</u> at p. 14.

48.     The value of each claim here is capped at $1,250 per plaintiff. There is no
financial incentive for any attorney to undertake the prosecution of a passenger's
claim individually if any recovery is limited to a maximum amount of $1,250.
Once the costs of filing such a suit as well as discovery and deposition costs are
factored in, each of these individual passenger's cases *becomes "a negative*

20

*value suit"*. The facts of this case, as well as the limited damages involved, comprise *"the most compelling rationale for finding superiority in a class action"* as stated by the Court in Allison, and warrants this Court to include as class members all 7,500 passengers identified by Defendant itself, who were entitled to compensation under 14 CFR 254, but whose rights were violated by American Airlines' implementation of its illegal 'Notice of Exclusion' policy.

Lastly, Defendant failed to address and challenge Plaintiff's assertions in his Motion For Class Certification that all four 'Enumerated Pertinent Matters' stated in F.R.C.P. 23(b)(3) as factors the Court should consider in granting Class certification, are met and complied with and substantiate Plaintiff's request for 'Class Action'.

## Injunctive Relief Is Merited

49.     Defendant argues that Plaintiff's request for injunctive relief under F.R.C.P. 23(b)(2) is not warranted because Plaintiff seeks monetary damages as well. Defendant does NOT deny, however, that it continues to violate the requirements of 14 CFR 254, even after the <u>Feature Enterprises</u> ruling, as well as this District Court's ruling invalidating and declaring illegal American Airlines' 'Notice of Exclusion' defense. Without such an injunction, American Airlines will continue its violation of federal law, to the detriment of thousands of passengers whose entitlement to compensation under 14 CFR 254, Defendant will continue to subvert. Plaintiff asks for Class Certification under F.R.C.P. 23(b)(2).

## Statute of Limitations

50.    In advocating a one year statute of limitations, Defendant mistakenly relies

on (a) an invalid argument that 14 CFR 253 authorizes (or validates) whatever

limitations period a carrier sets out in its Conditions of Carriage, and (b) a

misapplication of the Fifth Circuit's ruling in Carpenter v. Kloster Rederi A/S, 604

F.2d 11 (1979),

### *Carpenter* Applied A One Year Limitations Period
### Created By Law For Sea-Going Vessels *Only*

51.    Carpenter involved a *cruise ship passenger* suing the sea carrier for

injuries sustained when she fell on the ship after stepping from an elevator. In

ruling that the one-year limitation period printed on the passenger ticket excluded

Plaintiff's claim filed more than a year later, the Fifth Circuit applied the federal

statute in 46 USC Appx. Sec. 183b, cited by the Court in Miller v. Lykes Brothers

Steanship Co., 467 F.2d 464 (5th Cir. 1972).

52.    That specific and narrowly applicable federal statute, which is titled

**"Stipulations limiting time for filing claims and commencing suit"**, 46 USC

Appx Sec. 183b states:

> (a) **"Time periods**. It shall be *unlawful* for the manager, agent, master, or
> owner of *any sea-going vessel* … *transporting passengers* or
> merchandise or property … *to provide by rule, contract*, regulation, or
> otherwise **a shorter period** for giving notice of, or filing claims for loss
> of life or bodily injury, than six months, and *for the institution of suits on
> such claims*, **than one year**, such period for institution of suits to be
> computed from the day when the death or injury occurred." (emphasis
> added)

Defendant's reliance on Carpenter is invalid since the Carpenter ruling upholds

only the right of a "*sea-going vessel … transporting passengers*", to include a

22

one year limitations period for those _sea-going passengers_ to file their suits for

damages. Defendant is NOT a "sea-going vessel ... transporting passengers".

**14 CFR 253 Does NOT Authorize Or Validate
Defendant's One Year Limitations Period**

53.    As stated above in paragraphs 5 through 11, Defendant misrepresents the

purpose of 14 CFR 253. This rule had _the sole purpose of enacting one standard_

_for **notice**_ of contract terms for all airlines to follow. That this was the narrow

intent and scope of the rule was made clear by the CAB's comments published in

the Federal Register, Vol. 47, No. 224, Friday, Nov. 19, 1982.

> "This rule takes a Federal approach to _the structure of the contract notice_
> that must be provided."

> "The Board believes that for these reasons there should _be one standard_
> _for notice of contract terms for airlines in all States_, and that it has ample
> statutory authority to issue rules to that end." (emphasis added)

54.    The Board NEVER intended to preempt passengers' rights to bring

causes of action under State contract remedies or other federal statutes and

common law. This decision by the Board to limit the scope and purpose of 253

was made clear by the Board's discussion of the Minnesota Attorney General's

request for just such a clarification.

> The Minnesota Attorney General _suggested that the preemption be more_
> _specific_ so as _not to preempt State contract remedies and 'plain-_
> _language' statutes_. **The Board agrees with this suggestion** with
> respect to contract remedies, and has clarified the fundamental provision
> in Sec. 253.4 by stating that _the enforcement aspects of the rule_ **_are in_
> _addition to other remedies at law._**

> "...far from totally occupying the field of unfair and deceptive practices,
> _this rule is designed to preempt the State **only in one narrow area**_: the
> **_notice_** _that must be given to passengers_ in cases where an air carrier
> incorporates some of its contract terms by reference." (emphasis added)
> Id.

23

## 14 CFR 253 Left The Determination Of
## The Validity Of Incorporated Terms Up To The Courts

55.     As proof the CAB did NOT intend to authorize or itself validate the legality

or validity of any contractual terms incorporated by reference in an air carriers

Contract of Carriage, the CAB stated in its comments in the same Federal

Register that:

> "The effect and the **validity of State law relating to other aspects of the
> contracting process**, including State 'plain-language' statutes_, will
> depend on the detailed provisions of those laws_, and cannot be
> determined in advance within the scope of this proceeding."

> "The _courts will still have an important role_ to play _in determining whether_
> the _notice given was conspicuous_, and if so_ whether the **term itself is**
> **proper**." (emphasis added) Id.

## There Is NO Federal Limitations Period
## Prescribed By The Air Deregulation Act

56.     Defendant fails to cite any provision in the ADA that mandates a

limitations period in which passengers must file a cause of action against an air

carrier seeking to enforce their entitlement to compensation under 14 CFR 254.

In fact there is no applicable federal limitations period and Defendant's argument

that 14 CFR 253 infers that Defendant itself can set one is invlaid.

57.     Because there is no applicable federal limitations period, the United States

Supreme Court's ruling in North Star Steel Co. v. Thomas, 115 S. Ct. 1931, 132

L.Ed. 2d 27 (1995), and this Circuit's ruling in Staudt v. Glastron Inc., 92 F.3d

312 (1996), require this Court to first 'characterize the essence' of the federal

statute action and then secondly determine which state action is most analogous

to it and thirdly, implement the corresponding limitations period.

24

58.    Clearly, Defendant's violation of 14 CFR 254 is analogous to a breach of contract action. Plaintiff is "entitled" to compensation under the requirements imposed on Defendant for losing passengers' personal property, up to an amount of $1,250. By disclaiming liability and denying passengers their right to compensation, Defendant has breached the terms and conditions of the contract. Texas' four year limitations period for breach of contract actions under Section 16.004 Texas Civil Practice and Remedies Code is applicable.

Wherefore, premises considered, Plaintiff would pray this Court grant its Motion For Class Certification and grant the all the relief prayed for therein.

Respectfully submitted,

Heriberto 'Eddie' Medrano
Attorney For Plaintiff

Fed. I.D. # 5952
Texas Bar # 13897800
1101 West Tyler
Harlingen, Texas  78550

Tel. 956-428-2412
Fax 956-428-2495

25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

HECTOR A. CASAS

VS.                                              CIVIL ACTION NO. B-96-207

AMERICAN AIRLINES, INC.

## **ORDER**

On this day, came to be considered the foregoing **Plaintiff's Motion For**

**Class Certification**, and after due consideration of same, the response and

replies thereto, the evidence and law, this Court is of the opinion that said Motion

should be GRANTED.

SIGNED this the _____ day of _____, 1998.


_____
JUDGE PRESIDING

## CERTIFICATE OF SERVICE

I, Heriberto Medrano, hereby certify that a true and correct copy of the above

and foregoing *Plaintiff's Reply To Defendant's Response In Opposition To*

*Plaintiff's Motion For Class Certification*  was sent by Federal Express on

this *15th* , day of September, 1998 to the following counsel of record as

follows:

> Mr. James D. Struble
> JACKSON & WALKER, L.L.P.
> 901 Main Street, Suite 6000
> Dallas, Texas 75202

_____
Heriberto Medrano