69

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 23 1998

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| HECTOR A. CASAS | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | B-96-207 |
| AMERICAN AIRLINES, INC., | § | |
| | § | JURY |
| DEFENDANT. | § | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant American Airlines, Inc. ("American"), and files this Response to Plaintiff's Reply to Defendants Response in Opposition to Plaintiff's Motion for Class Certification and shows:

I.

### INTRODUCTION

American files this Response to Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion for Class Certification. American shall reply to some of the new matters that merit brief reply.

## II.

## NOTHING IN 14 C.F.R. § 253.5(b)(1) AND § 254 DECLARES EXCLUSIONS UNENFORCEABLE

It is the Plaintiff's position that § 254, when read in conjunction with § 253, evinces an intent by the CAB to administratively declare wholly void and unenforceable certain contractual terms set forth in an airline's conditions of carriage. Nothing in the Rules themselves, nor in the agency's consideration of the Rules, supports Plaintiff's construction. Indeed, what we can gather from the CAB's commentary supports Defendant's position that there is a $1250 liability limit for lost baggage and that certain unique items may be lawfully excluded from the $1250 limit. Plaintiff's construction of the regulations is <u>not</u> the construction given by the CAB, the drafter of the Rules. If, as Plaintiff claims, the actual intent of the CAB was to declare certain exclusions unlawful, then there should be a clear, direct statement to this effect in the text of the Rule. There is none. If Plaintiff's position were correct, there should be a clear, direct statement in the commentary stating exclusions are unlawful. There is none. As we have shown (and will show again), the CAB's intent was to allow passengers to receive notice of exclusions from the $1250 limit.[1]

---

[1] Plaintiff's assertion on pp. 5-6 that CAB specifically made § 253.5(b)(1) "subject and subservient" to § 254 is entirely without support. Indeed, those words — "subject and subservient to" — cannot be found in the rule or its commentary; instead, the rules are consistent with each other as we showed from the CAB commentary and from case law considering tariffs. (See pp. 5-7 of American's Response in Opposition to Plaintiff's Motion For Class Certification).

DEFENDANT'S RESPONSE TO PLAINTIFF'S REPLY TO DEFENDANT'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION                       PAGE 2

## III.

## AMERICAN CITES TO PROPER AGENCY INTENTIONS
## REGARDING THE ADOPTION OF RULE 254

Plaintiff claims that American misrepresented to the Court that a 1982 proposed draft was in fact enacted into law by the CAB. Plaintiff is incorrect, as we will show. First, on November 24, 1982, the CAB proposed the rule adopting part 14 C.F.R. § 254. This proposal is found at 47 Federal Register 52987-01, which is attached hereto as Exhibit "1." In this original proposal, the CAB stated its intent with regard to the minimum liability limit and the allowance of certain exclusions of liability. The CAB's views are consistent with American's views. In proposing Rule 254, the CAB stated:

> The Board finds that $1,000 is a more reasonable limitation, which will benefit passengers without a significant burden on carriers. Passengers are guaranteed that air carriers cannot unreasonably limit their liability for lost, damaged or delayed baggage. They will receive notice of any items, such as fragile or perishable goods, <u>that are excluded from the coverage</u>.

47 Federal Register at *52990 (November 24, 1982).[2] (emphasis added). This interpretation by the CAB has never changed. Second, the CAB stayed the effective date of the proposed § 254 rule. See 49 Federal Register 5065 (February 10, 1984).[3] Further, the CAB considered the ATA's comments and additional proposals, but none of these considerations relate to this issue, namely whether the

---

[2] In November 1982, the Board initially proposed a limit of $1000; when the rule became effective on April 10, 1984, the limit was increased to $1250 because of inflation. See 49 Fed. Register 5065 (February 10, 1984).

[3] The delay was due to the Air Transport Association's ("ATA") complaints that the Board had failed to give adequate notice and opportunity to comment on the proposed rule and that the liability rules would undermine the usefulness of the standard ticket and that the Administrative Procedures Act had not been followed. None of these complaints addressed the issue pertinent to this case.

DEFENDANT'S RESPONSE TO PLAINTIFF'S REPLY TO DEFENDANT'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION          PAGE 3

CAB intended to administratively declare exclusions unenforceable. Upon final adoption, the CAB did raise from $1000 to $1250 the minimum general liability limits. The Board also considered, but ultimately rejected, a proposal to require airlines to offer excess valuation coverage. Finally, the Board's Rule 254 was finally adopted and became effective on April 10, 1984. See 49 Fed. Register 5065, attached hereto as Exhibit "2." Nothing between its initial promulgation of the rule in November of 1982 through its final adoption in 1984, evidences any intent by the CAB to retreat from its view, stated above, that carriers will have a liability limit of $1250 and passengers will receive notice that certain items are, in the words of the CAB, "excluded from coverage" of the rule. 47 Fed. Register at *52990. Indeed, in the February 10, 1984 commentary when § 254 was finally adopted, the CAB reaffirmed that the comments in the November 24, 1982 Federal Register continue to be valid. According to the CAB:

> The basic question of whether there should be any Federal baggage liability rule at all was considered and discussed in ER-1305, 47 Fed. Register 52987, November 24, 1982. <u>The Board finds that the conclusions drawn at that time continue to be valid</u>.

49 Fed. Reg. at *5070 (February 10, 1984) (emphasis added). Thus, the CAB plainly had no intent to declare the contractual exclusions unenforceable. Thus, the Court may and should dismiss Plaintiff's individual case as a matter of law on this basis alone.

## IV.

### DEFENDANT'S RELIANCE UPON CASE LAW WAS AND IS APPROPRIATE

Plaintiff next contends that the Magistrate and the district court ruled that the Defendant's citing of <u>Lichten v. Eastern Airlines, Inc.</u>, 189 F.2d 939 (2d Cir. 1951), <u>Tishman & Lipp, Inc. v. Delta Air Lines, Inc.</u>, 275 F. Supp. 471 (S.D. N.Y. 1967), <u>aff'd.</u> 413 F.2d 1401 (2d Cir. 1969); and

Blair v. Delta Air Lines, Inc., 344 F. Supp. 360 (S.D. Fla. 1972), aff'd. 477 F.2d 564 (5th Cir. 1973) were invalid and inapplicable. The Plaintiff is incorrect; neither the Magistrate nor the district court held that those cases were "invalid" or "inapplicable." Although the judges mentioned Lichten and Tishman, they simply relied upon Feature Enterprises v. Continental Airlines, Inc., 745 F. Supp. 198 (S.D. N.Y. 1990), which decision did not consider the contrary intent of the CAB. Moreover, while Klicker v. Northwest Airlines, Inc., 563 F.2d 1310 (9th Cir. 1977) criticized Lichten and Tishman, the law is clear in the Fifth Circuit that Tishman is correct and the Fifth Circuit adheres to Lichten and Tishman. See Blair v. Delta Air Lines, Inc., 344 F. Supp. 360, 365-67, aff'd. 477 F.2d 564 (5th Cir. 1973). Finally, and most recently, the Fifth Circuit has reaffirmed that exclusions stated in an airline's ticket are fully enforceable. Jewelers, 117 F.3d at 931.

V.

### THE SIGNED RELEASES BY MOST PUTATIVE CLASS MEMBERS MAKES CLASS TREATMENT UNWARRANTED

As we showed in our original response, the presence of executed releases by 75% of the putative class members has uniformly been held to preclude class treatment. Judge Vela so held in his March 26 order and Plaintiff does not show otherwise. The Fifth Circuit likewise held in Bernard v. Gulf Oil Corp., 841 F.2d 547, 550-51 (5th Cir. 1988), and to which Plaintiff does not even respond. Similarly, in a case very similar to this action, Greeley v. KLM Royal Dutch Airlines, 85 F.R.D. 697 the court properly denied class certification because of the presence of releases. Again, Plaintiff wholly fails to respond. On these authorities alone, the motion to certify should be dismissed.

Indeed, the Court need not decide whether the releases are enforceable at this stage of the proceeding. The mere presence of the releases suggests denial of class treatment under these

authorities. Nonetheless, American will respond to Plaintiff's arguments about the validity of the releases.

### A. PLAINTIFF'S "SEPARATE CONSIDERATION THEORY" IS UNSUPPORTED

Plaintiff claims that the releases are invalid because the consideration did not relate to one of the claims released. Plaintiff offers no legal support for such a theory. In fact, Corpus Juris Secundum flatly rejects such an argument: "The lack of separate consideration for a claim discharged by a general release does not prevent the release from releasing that claim." 76 C.J.S. Release § 64 (1994).

Moreover, the cases Plaintiff cites do not help Plaintiff. Plaintiff cites Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 342-48 (1971), for the proposition that the scope of releases is to be interpreted by the language of the document and the circumstances surrounding its execution. American agrees. Both the language and circumstances surrounding the releases at issue support enforceability. The language of the release is plain and self-explanatory:

> By endorsement or deposit of this check I (we) hereby release American Airlines, Inc., its agents, including other airlines providing transportation, its employees and representatives from all claims rising in connection with the loss, damage or delay of my belongings transported or authorized to have been transported on the travel date indicated on the remittance advice.[4]

---

[4] Despite the broad language of this release, plaintiff advances an imaginative argument: "Clearly American Airlines itself, restricted the breath [sic] and scope of the release to the loss of 'Non-Excluded' items listed in passengers' lost baggage claims." Plaintiff's Reply To Defendant's Response In opposition To Plaintiff's Motion For Class Certification at 12. This assertion requires no legal counter-authority— it is simply factually inaccurate when compared to the language of the release quoted above.

DEFENDANT'S RESPONSE TO PLAINTIFF'S REPLY TO DEFENDANT'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION                      PAGE 6

This language is broad enough to encompass "all claims." Moreover, the circumstances surrounding the execution also support its validity. This release is placed in a very conspicuous place— the back of the settlement check. Parties receiving these settlement funds must endorse the check and read the release if they are to receive the proceeds. The release language is short and plainly worded. Additionally, the parties signing the release are under no external duress. These settlement checks are typically mailed to the recipient's home or work, where the person may deliberate for an extended period before endorsing the document. Plainly, Zenith Radio Corp. supports the enforceability of the release at issue here.

Contrary to Plaintiff's "separate consideration" theory, the Fifth Circuit has not required some "corresponding consideration" as postulated by plaintiff. In keeping with a public policy favoring "voluntary settlement of claims and enforcement of releases," Williams v. Phillips Petroleum Co., 23 F.3d 930, 935 (5th Cir.), cert. denied 513 U.S. 1019 (1994), the Fifth Circuit routinely enforces broad releases of liability. For example, in the employer-employee context, a former employee may seek to advance certain claims against the former employer, but the employee has signed a release in favor of the employer. Absent fraud or duress, these agreements are enforced, and the employees' claims are barred. See, e.g., Rogers v. General Elec. Co., 781 F.2d 452 (5th Cir. 1986) (plaintiff signed broad release from all claims in exchange for $800 bonus; release upheld); Bowers v. Firestone Tire & Rubber Co., 832 F.2d 64 (5th Cir. 1987) (after successful trial, litigant settled with one of multiple defendants in lieu of an appeal; court held that the broad release also barred pursuit of prejudgment interest).

Releases of liability are an important mechanism by which private parties settle disputes without resort to litigation. Releases <u>are</u> given full effect by the Fifth Circuit today. Plaintiff raises no meritorious defenses to the release forms executed by prospective class members. They are valid as a matter of law.

### B. ADEQUATE CONSIDERATION SUPPORTS THE RELEASES

Plaintiff's attempt to characterize the settlement payments as "pre-existing duties" does not comport with an accurate examination of the law of consideration. Again, plaintiff cites authority which only supports the conclusion that the release forms are valid, enforceable and backed by sufficient consideration.

Plaintiff cites <u>Maynard v. Durham & Southern Railway Co.</u>, 365 U.S. 160, 164 (1991) for the quotation, "It is a well-established principle of federal law that a *promise to perform a preexisting duty* is NOT sufficient <u>consideration</u> and is grounds for setting aside a release." (emphasis copied from Plaintiff's Reply).[5] Nonetheless, <u>Maynard</u> merely concluded that the existence of adequate consideration for a release from liability under the Federal Employers' Liability Act was a jury question in that case. <u>See id.</u> Such a conclusion only reinforces American's position that the release issue here precludes this case from being a manageable class action.

---

[5] This citation is baffling. Although plaintiff carefully notes that the emphasis in quotation was added, the quoted language appears nowhere within the cited case. In fact, the phrase attributed to the Supreme Court does not even represent an accurate paraphrase of the Court's actual language. On page 163 of the <u>Maynard</u> opinion, the following sentence is found: "A release is not supported by sufficient consideration unless something of value is received to which the creditor had no previous right." This sentence was a quotation from an Eighth Circuit case, <u>Burns v. Northern Pac. R. Co.</u>, 134 F.2d 766, 770 (8th Cir. 1943), and discusses a prevailing interpretation of the Federal Employers' Liability Act.

Plaintiff attempts to classify the settlement payments as mere pre-existing obligations. They are not. Each baggage case is an unliquidated and disputed claim. There is an <u>issue of liability</u> and dispute as to the <u>amount of damages</u> for any passenger's lost baggage. Indeed, Plaintiff recognizes in his reply that "Defendant is correct that 14 C.F.R. § 254 requires a passenger to <u>prove</u> the loss of or damage to his/her property." (Plaintiff's Reply at p. 17). Thus, the payments are made in exchange of a release of a disputed claim. Contrary to Plaintiff's position, it is not a legal entitlement, such as social security benefits. Moreover, Plaintiff's position is contrary to the Fifth Circuit decisions cited earlier. For example, in <u>Rogers</u>, plaintiff was among those listed in a settlement between her employer and the EEOC as entitled to a bonus of up to $800. See <u>Rogers</u>, 781 F.2d at 453. Thus, the issue of liability was certain; the amount of damages was uncertain. In exchange for payment of the full $800, plaintiff executed a broad release in favor of her employer. The Fifth Circuit upheld the release and barred plaintiff's action. See <u>id.</u> at 456.

Monetary resolution of a passenger's disputed claim for consideration is fully enforceable, as we pointed out in our original response. The actual amount of such compensation is open to negotiation, and perhaps subject to litigation. An expedited payment of claims, in lieu of protracted dispute and/or litigation, and for a release of all claims, is certainly valid consideration. The releases are enforceable.[6]

---

[6] Finally, plaintiff cites to <u>Redel's Inc. v. General Electric Co.</u>, 498 F.2d 95, 101-101 (5th Cir. 1974) as support for the assertion that "these releases are invalid and unenforceable as a matter of law." This use of authority is inaccurate at best. The <u>Redel's</u> court considered a challenge that a release of <u>future</u> claims was invalid. See <u>Redel's</u>, 498 F.2d at 100. As to <u>past</u> claims, the court held that the release at issue "effectively barred" any liabilities occurring prior to its execution. None of American's releases are for future baggage claims. Thus, <u>Redel's</u> only supports American's position.

### C. *MELONG V. MICRONESIAN CLAIMS COMMISSION* SQUARELY SUPPORTS AMERICAN'S POSITION

Plaintiff devotes considerable briefing to the case of Melong v. Micronesian Claims Comm'n, 643 F.2d 10 (D.C. Cir. 1980), despite the fact that Melong supports American's position. First, the Melong court found the release agreements at issue to be enforceable, and rejected contentions that the payments made were merely "pre-existing duties." Second, the Melong court held that plaintiff, who, like Plaintiff here, did not sign a release, could not represent a class who signed release forms. See Melong, 643 F.2d at 14. Indeed, Melong confirms that this Court need not decide the validity of the releases; the mere presence of the issue alone makes class treatment improper under Melong, Greeley and Bernard.

## VI.

## A ONE-YEAR LIMITATIONS PERIOD APPLIES

### A. FEDERAL LAW GOVERNS

Federal law mandates that Plaintiff's claim, and the claim of any putative class members, are governed by a one year contractual period of limitations. Pursuant to that federal law, and not the Texas Civil Practice and Remedies Code, the contractual one year period of limitation contained in American's Conditions of Carriage applies to lost baggage claims. The Fifth Circuit has repeatedly held that a contractual one year period of limitations is valid and enforceable. Jewelers, 117 F.3d at 930 (5th Cir. 1997) ("Carriers are allowed to limit their liability in the Contract of Carriage"); Carpenter v. Klosters Rederi A/S, 604 F.2d 11, 13 (5th Cir. 1979).

Plaintiff argues that the Fifth Circuit's decision in Carpenter should not apply to this lawsuit because it is a cruise ship case governed by a one year limitations period of 46 U.S.C. § 183b.

Plaintiff's argument is incorrect. First, the Fifth Circuit makes no mention of 46 U.S.C. § 183b in the <u>Carpenter</u> opinion. Second, the <u>Carpenter</u> decision simply enforced a <u>contractual period</u> of one year,[7] and did not concern a federal statute of limitations. Third, the Fifth Circuit in <u>Jewelers</u> cited <u>Carpenter</u> with approval for the proposition that carriers are allowed to limit their liability in their Contract of Carriage. <u>Jewelers</u>, 117 F.3d at 930.

WHEREFORE, PREMISES CONSIDERED, American Airlines, Inc. respectfully prays that Plaintiff's Motion For Class Certification be denied.

Respectfully submitted,

JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas  75202
(214) 953-6000
(214) 953-5822 (Telecopy)

By: _____ (w/ permission)
**David T. Moran**
State Bar No. 17358700
S.D. No. 11261
Attorney-In-Charge
**James D. Struble**
State Bar No. 19425700
S.D. No. 14276

ATTORNEYS FOR DEFENDANT
AMERICAN AIRLINES, INC.

---

[7] The statute, 46 U.S.C. § 183b, is <u>not</u> a statute of limitations; it merely declares any period of less than one year to be unenforceable against a ship owner. Plaintiff cites no federal statute that invalidates an airline's contractual term setting forth a one year period to file suit.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been served upon the Plaintiff's counsel of record via Federal Express on this 22nd day of September, 1998.

Heriberto (Eddie) Medrano
Attorney at Law
1101 West Tyler
Harlingen, Texas  78550

David T. Moran (w/permission)

1798658.1

DEFENDANT'S RESPONSE TO PLAINTIFF'S REPLY TO DEFENDANT'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION                    PAGE 12