UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 2 0 1998

Michael N. Milby
Clerk of Court

HECTOR A. CASAS,  )
             Plaintiff  )
Vs.  )
  )
AMERICAN AIRLINES, INC.  )
             Defendant  )

Civil Cause No. B-96-207

**Plaintiff's Reply To Defendant's Response To Plaintiff's Alternative Proposal For Class Certification-Subclasses**

TO THE HONORABLE JUDGE OF SAID COURT;

Comes now Hector A. Casas, Plaintiff, by and through his attorney Heriberto 'Eddie' Medrano, and files this reply to Defendant's response to Plaintiff's Alternative Proposal For Class Certification-Subclasses.

### Summary of Plaintiff's Response

Defendant does **NOT** challenge Plaintiff's <u>alternative</u> request for Class Certification of the approximately 2,000 passengers who did NOT sign any release, like Plaintiff himself. Instead, Defendant now, for the first time after almost two years of litigation, two Court rulings imposing liability on Defendant, and this Court's ruling denying its Motion To Dismiss, chooses to now challenge Plaintiff's right to serve as Class Representative. That Defendant does so on the eve of this Court's ruling on Plaintiff's Motion For Class Certification brings in to question the timing, intent and good faith of Defendant's challenge. Plaintiff, however, disagrees with Defendant as to the applicability of the law cited by Defendant in its challenge, asks that said challenge to Plaintiff serving as Class

1

CutePDF - www.fseslo.com

Representative be denied, and in the alternative would request leave of the Court to allow another passenger to substitute as Class Representative.

Plaintiff also addresses the continued misrepresentations of the facts and case holdings which methods Defendant continues to use in attempting to mislead the Court and thus continue its invalid and illegal practice of denying its passengers compensation for its own negligent loss of their property including certain items it defines as 'Excluded Items' lost in their baggage. This 'Notice of Exclusion' policy, though declared invalid by the Court in March, 1998, as well as the federal district court ruling in <u>Feature Enterprises, Inc., v. Continental Airlines</u>, 745 F.Supp. 198  in 1990, is **STILL** being implemented by Defendant American Airlines to the detriment of the thousands of persons who have filed such claims, and whose numbers increase at the rate of approximately 250 additional persons per month.

### I.
### Defendant Misrepresents The Facts Regarding The Nature Of The Supposed "Compensation" Paid To Passengers That Signed Releases

1.      Defendant continues to misrepresent the facts regarding what the money paid some passengers actually represents. The incontrovertible fact is that American Airlines ***NEVER PAID ANY PASSENGER ANY MONEY*** **FOR IT'S LOSS OF *'EXCLUDED ITEMS'*** as that term is defined in its Contract of Carriage.

2.      Defendant's statement on page three of its response that "… three-fourths of the class defined in Planitff's Motion for class Certification <u>*received*</u> <u>*compensation for their losses*</u> and signed a release of all claims" ***falsely implies***

2

to the Court that these passengers were paid some amount of money for the loss of their 'Excluded Items' by American Airlines. To the contrary, Defendant specifically stated in its letters accompanying the checks that it was "***denying liability and making no compensation for its loss of 'Excluded Items'***" contained in the passenger's lost baggage claim. Defendant further stated ***unequivocally*** that the check "***only represented*** " a partial adjustment for its loss *of NON-Excluded Items, such as clothing*. Please see Exhibits 4 through 14 attached to Lisa Callahan's deposition.

3.      Defendant cannot ***cite one instance*** where a passenger received one dollar specifically as compensation for American Airlines' loss of that passenger's 'Excluded Item' because it has NEVER admitted liability and NEVER paid any passenger ANY money for its loss of 'Excluded Items', as testified to under oath by Ms. Lisa Callahan, American Airlines' manager of Central Baggage Services.

4.      Contrary to American Airlines' misrepresentations, all 7,500 putative class members lost 'Excluded Items', and all 7,500 putative class members were *COMPLETELY AND ABSOLUTELY DENIED ANY COMPENSATION* for their loss of same. Defendant even admitted that Plaintiff's claim is similar and typical of all 7,500 claims and was handled in the same way regarding denying liability and compensation as to 'Excluded Items'. Ms. Callahan's deposition at page 77.

## II.
## Defendant's Challenge To Plaintiff Serving as Class Representative Is Unwarranted

5.      Defendant 's challenge to Plaintiff serving as Class Representative based on the Fifth Circuit's decision in <u>Zylstra vs. Safeway Stores, Inc.</u>, 578 F.2d 102

(1978) is incorrect. Unlike in <u>Zylstra</u>, Plaintiff here is **<u>NOT seeking to serve as</u>**
<u>BOTH Class *Representative* and Class *Counsel*</u>. Plaintiff is serving only as Class
Representative and is NOT engaged in performing any attorney work on behalf
of the Class. That Plaintiff participated to some extent in the prosecution of his
own individual claim is permissible, indeed any individual Plaintiff's right, and
should not be misrepresented by Defendant as acting as attorney for the Class
which Defendant knows is NOT the case.

6.      <u>Zylstra</u> held that "attorneys who were partners or spouses of named
plaintiffs or <u>who were themselves members of the class</u> should be subject to a
*per se rule* of disqualification and<u> should not be permitted to serve as counsel for</u>
<u>the class.</u>" <u>Zylstra</u> at page 102. Hector A. Casas is NOT seeking to serve as
counsel for the class. More importantly, the issue that gave rise to the *per se rule*
i.e. the determination of what percentage of the Class monetary common fund
should be awarded as attorney's fees, is NOT an issue in this case.

7.      The Fifth Circuit in <u>Zylstra</u> justified the pronouncement of the *per se rule*
by stating that, "An attorney whose fees will depend upon the outcome of the
case and who is <u>also a class member</u> or closely related to a class member
cannot serve the interests of the class with the same unswerving devotion as an
attorney who has no interest other than representing the class members." <u>Zylstra</u>
at page 104.

8.      Here, Plaintiff's complaint prays that<u> *any attorney's fees will come from a*</u>
<u>*separate assessment to be paid by Defendant directly, and will come separate*</u>
<u>*and apart from any monetary damages awarded to the Class members*</u>. The

4

amount of attorney's fees to be awarded is also subject to the Court's review and discretion. Therefore, since the amount of attorney's fees to be awarded will come separate and apart from the Class monetary common fund, and the fact that the Class Representative will have no input in determining what those attorney's fees should be, the conflict issue giving rise to Zylstra's *per se rule* does not exist in this case.

9.      The Fifth Circuit in fact implemented this very same argument in setting aside its Zylstra's *per se rule* when it denied the Defendants' challenge to the Class Representative's adequacy of representing Class members in Phillips vs. Joint Legislative Committee On Performance and the State of Mississippii, 637, F.2d 1014.  In Phillips, where the Fifth Circuit defined the purpose of the *per se rule*, the Court ruled that where "Any *attorney's fee* granted in these cases will come **directly** from the defendants ... and **NOT** from any fund created for class relief ...", then any possible conflict the Class Representative may have does NOT exist and Zylstra's *per se* rule is *inapplicable.* (emphasis added)

10.      In Phillips, Class Counsel were two attorneys that worked for the Lawyers' Committee for Civil Rights Under Law. Barbara Phillips, one of the named Class Representatives, was also employed as an attorney at the Lawyers' Committee, although she was NOT acting as an attorney in the case. Just like in this case, the Phillips Defendants argued that under the Fifth Circuit's *per se rule* announced in Zylstra, plaintiff was not an adequate class representative under rule 23(a)(4) and Class certification should be denied. Phillips at page 1024.

5

11. In denying the Defendants' Motion To Disqualify the Class Representative, the Fifth Circuit stated:

> "Although we agree wholeheartedly with the rule announced in <u>Zylstra</u> and <u>Kramer</u>, *we hold that it does not apply here*."

> "The <u>Zylstra</u> rule is *directed at a particular ethical problem*; the potential conflict that arises **when a class representative** stands (or appears to stand) to *gain financially from an award of attorney's fees made out of a class fund*. Put simply, the cause for **<u>concern is that the class representative may be too generous with the class's money in granting a fee to his own partner or spouse</u>.**"

> "Here <u>the problem does not arise</u>. **Any attorney's fee** granted in these cases **will come directly from the defendants … <u>and not from any fund created for class relief</u>**; hence, Ms. Phillips would never have the opportunity for overgenerosity." (emphasis added) <u>Phillips</u> at page 1024.

12. Similarly here, since any attorney's fee granted by the Court will come directly from Defendant American Airlines, and not from any fund created for class relief, Mr. Casas, as Class Representative will never have the opportunity for overgenerosity, thus the <u>Zylstra</u> *per se rule* is *inapplicable*.

### III.
### Plaintiff Has Already Obtained A Monetary Judgment
### On His Individual Claim

13. There is one other very important fact in this case that makes <u>Zylstra's</u> <u>per se rule</u> inapplicable. Plaintiff, Hector A. Casas, has *already won a judgment for the full amount of his own individual claim i.e. $1,029*. As a member of the Class, he has already received an order of the Court awarding him 100 % of his damages. Thus, any conflict regarding his right to compensation as a Class member vis-à-vis other Class members is *moot*. The <u>Phillips</u> analysis is therefore even more applicable in this case and sets aside <u>Zylstra's</u> per se rule.

6

Defendant's challenge to Plaintiff serving as Class Representative, like that in
Phillips, should also be denied.

## IV.
## Defendant's Assertion That Individual, And NOT Common, Issues
## Predominate Is Incorrect

14.     Defendant's third point in its response revolves around its assertion that,
"A decision about Plaintiff's claim will not resolve any of the other 7,500 putative
class members' claims." Defendant is incorrect.

15.     The truth is that *now that the **liability question** has been answered*, the
only question left is *what are the damages Defendant American Airlines must pay*
*the 7,500 Class members* who submitted claims for lost 'Excluded Items' and
NEVER received ANY compensation for their loss? The determination of each
Class members' damages is easily ascertained using objective standards. In
determining what damages each Class member suffered, the answer to same is
restricted by the following factors:

> (a) The maximum amount of damages recoverable is limited to $1,250 per
>     passenger, as per the requirements of 14 CFR 254.

> (b) The specific amount of damages is limited to the value of the lost
>     'Excluded Item' described by the passenger in the 'verified' Statement
>     of Property Loss submitted to American Airlines within the specified
>     time period of thirty days.

> (c) No subjective or hard to determine claim for damages is sought, such
>     as for pain and suffering, mental anguish, lost wages, past present or
>     future medical expenses, loss of consortium, etc.

7

16.     Defendant's argument that it has a right to challenge the validity of the
claim and require each passenger to provide proof of loss, or contest the fair
market value of the lost 'Excluded Item', fails for the following reasons:

(a) As to the claim's validity, each Class member has *already* submitted a
'verified' three page Statement of Property Loss as required by
Defendant way back when the loss occurred. (Depending on the
Court's ruling as to what is the appropriate statute of limitations, some
passengers submitted these 'verified' claims and proof of loss six years
ago as far back as 1992.) Along with the information requested, each
Class member identified which particular American Airline flight they
flew as well as copies of the baggage tags they were given by
Defendant when they checked in their bags. The fact that each Class
member has these tags for the baggage they did NOT receive back
from Defendant makes these claims valid per se. Moreover, that these
7,500 identified claims are valid has been conceded to by Defendant's
agent Lisa Callahan in her deposition.

(b) As to proof of loss, each Class member was required to list and
describe in detail the specific 'Excluded Item' that was lost as well as
the dollar value of said item. Defendant threatened each Class
member with federal criminal prosecution if their 'verified' claim was
false. Class members also submitted 'proof' of the value of the lost
item such as sales receipts, credit card statements, etc.

8

Most important, Defendant American Airlines has waived any right to challenge the claim or even the dollar value of the lost 'Excluded Item' because it knowingly and intentionally chose NOT to question the claim or the dollar value of the lost 'Excluded Item' at the time passengers submitted their 'verified' Statement of Property Loss and accompanying documents. Instead, Defendant simply and unilaterally denied having any liability for its loss of these 'Excluded Items' and sent each Class member a letter stating its was not liable and not making any compensation for same. Interestingly, Defendant often did challenge and request additional proof from passengers in determining what compensation to pay regarding NON-Excluded Items such as clothing.

(c) Defendant Is **_Estopped_** From Challenging Value Of Claims – By choosing to unilaterally deny Class members' claims for compensation by denying all liability for its loss of 'Excluded Items', Defendant is not estopped from challenging the value of the lost 'Excluded Item' listed in the passenger's lost baggage claim. Defendant's right to question the passenger's claim and dollar value of that claim was waived by its decision to illegally implement its 'Notice of Exclusion' policy in its deliberate effort to violate federal law and circumvent the minimum mandatory baggage liability limits imposed on it as a domestic air carrier by 14 CFR 254. In short, because of Defendant's illegal actions in denying these Class members' claims outright, American Airlines is

9

now estopped from challenging them now.

(d) <u>Defendant Has Burden Of Proof</u> – If, however, the Court rules estoppel is not warranted, then Defendant's argument that it has a right to challenge the validity of a passenger's claim or the dollar value of the claim ignores the fact that all 7,500 Class members have already submitted their 'verified' claims and proof of loss. Indeed, Defendant did NOT compensate these 'Excluded Item' claims ONLY because American Airlines relied on its invalid 'Notice of Exclusion' policy, and NOT because it thought or had proof these claims were false. The burden is on Defendant to now come forward with admissible proof that these 7,500 Class members' claims are invalid and false, not the other way around.

17.     Clearly, determining the damages and compensation each Class member is to receive is an easy and objective process, made more so by the fact that all the information necessary to make these assessments is already in the possession of Defendant and the monetary compensation limited to no more than $1,250 by 14 CFR 254.

## V.
## The Three Subclasses Proposed By Plaintiff
## Merit Class Certification Under Rule 23(b)(2)

18.     Defendant's argument that none of the proposed Subclasses justify class certification under 23(b)(2) is without merit in light of the Fifth Circuit's recent ruling setting out the parameters of when a (b)(2) class action is appropriate. Plaintiff invites the Court to review the latest Fifth Circuit decision regarding Class

actions in <u>Allison v. Citgo Petroleum Corp</u>., WL 483970, decided August 18, 1998. In this thirty-one (31) page decision, the Fifth Circuit discusses the merits and factors to be considered in determining if a requested Class certification qualifies as a 23(b)(2) or 23(b)(3) action, in great detail. A reading of the steps taken by the Fifth Circuit in making such a determination, if applied to the facts in this case, warrant this Court certifying a Class action under F.R.C.P. 23(b)(2).

19.     The Fifth Circuit begins its Class action discussion in <u>Allison</u> by stating the reason and purpose for having Class actions at all:

> "Class action device exists primarily, if not solely, to achieve measure of judicial economy, which benefits parties as well as entire judicial system; it preserves resources of both courts and parties by permitting issues affecting all class members to be litigated in efficient, expedited, and manageable fashion." <u>Allison</u> at headnote 4.

In determining if Class certification is warranted under 23(b)(2), the Fifth Circuit started its analysis by first stating that:

> "The rule is clear that claims seeking injunctive or declaratory relief are appropriate for (b)(2) class certification. Thus, if the plaintiffs sought only injunctive and declaratory relief, this case could readily be certified as a class action under Rule 23(b)(2)."

However, since the Plaintiffs in <u>Allison</u>, like Plaintiffs here, were also seeking monetary relief, the Court proceeded to a second step in determining if a 23(b)(2) class action was warranted:

> "We, like nearly every other circuit, have adopted the position taken by the advisory committee that *monetary relief may be obtained in a (b)(2) class action* so long as the *predominant relief* sought is injunctive or declaratory."

In defining what "predominant relief" means, the Court stated, "We must determine, therefore, what the concept of predomination means in the context of Rule 23(b)(2).

CVisPDF - www.fosiw.com

20.   The Fifth Circuit then focused its attention on the degree of *"class cohesiveness"* that existed regarding Plaintiffs' monetary claims in resolving the 'predominant relief' question. The Court stated:

> "… because of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, *assumed to be a homogenous and cohesive group with **few conflicting interest among its members.***"

Such is the nature of this Class action involving 7,500 Class members' claims for monetary damages. All 7,500 Class members share exactly the same facts, filed the same claims, were completely denied compensation for their lost 'Excluded Items', by Defendant asserting the same invalid policy of denying liability based on its 'Notice of Exclusion' statement in the contract of carriage, in violation of 14 CFR 254. Most importantly, all 7,500 Class members' claims for monetary damages are limited to no more that $1,250 each and ***there exists NO CONFLICTING INTERESTS AMONG THEM!***

21.   The Fifth Circuit then describes the type of monetary relief allowed under a (b)(2) action as being "*incidental*" to the requested injunctive or declaratory relief.

> "By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief."

> "Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established."

> "Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances."

12

By declaring Defendant's 'Notice of Exclusion' policy being invalid, the minimum mandatory compensation limits of 14 CFR 254 automatically apply and all 7,500 passengers are entitled up to $1,250 each for the loss of their 'Excluded Items' by Defendant. Clearly, since no intangible or subjective factors need be implemented in determining the dollar value of the lost items, these claims' monetary damages are incidental  and flow from the fact that Defendant's attempt to circumvent the requirements of federal law have failed.

22.     Lastly, and most important, the Fifth Circuit cited its decision in <u>Pettway</u>, 494 F.2d 257, as an example that Rule 23(b)(2*) does **not** preclude all claims for monetary relief*. The Court stated that where the monetary relief sought under a (b)(2) action was "an **equitable** remedy, and the defendant's conduct made **equitable remedies appropriate**", then a (b)(2) action was warranted and monetary relief allowable.

        Stating that Plantiffs' demands in <u>Pettway</u> for back pay<u> were NOT in the nature of damages</u>, but <u>*rather "an integral part of the statutory **equitable** remedy*</u>", the Fifth Circuit stated that "If the instant case involved only claims for **equitable** *monetary relief*, <u>Pettway</u> would control", and a (b)(2) action allowing monetary relief would be warranted.

23.     The Fifth Circuit's <u>*"equitable monetary relief"*</u> distinction as defined in <u>Pettway</u> and stated in <u>Allison</u>, exactly characterizes the type of monetary relief sought by Class members in this case. Class members seek only the monetary equitable relief they are entitled to arising from a particular federal statute i.e. 14 CFR 254 and thus warrants a class certification under 23(b)(2) F.R.C.P.

13

**VI.**

**This Case Is A "*Negative Value Suit*" Which Warrants Class Certification**

24.     The Fifth Circuit in <u>Allison</u> made clear what it believes to be <u>*the one most*</u> <u>*important fact*</u> that warrants a case being certified as a Class action – When the case involves **A Negative Value Suit**.

> "Finally, the 'most compelling rationale for finding superiority in a class action—the existence of a negative value suit,…" <u>Allison</u> at page ??

A <u>*'negative value suit'*</u> involves a case where the <u>*monetary value of the claims*</u> involved are <u>*so low*</u> and the availability of <u>*substantial attorney's fees is negligible*</u> that financial barriers make ***individual lawsuits unlikely or infeasible***. <u>Allison</u> at page 50

25.     A 'Negative Value Suit' is exactly what we are confronted with in this case. Here, the facts are undisputed that the "monetary value" of each Class members' claims is limited to a maximum of $1,250 each. Such a monetary limitation on damages makes it "unlikely or infeasible" for individual passengers to overcome the "financial barriers" which prohibit the hiring of individual attorneys to prosecute these claims individually. In simple terms, no passenger can afford to hire an attorney and pay perhaps thousands of dollars in costs and fees in order to recoup a maximum of $1,250. Conversely, no attorney would take on the prosecution of a passenger's claim on a contingency basis if the maximum damages award is limited to $1,250.

26.     Using the Fifth Circuit's criteria which it considered the <u>*paramount reason*</u> <u>*justifying Class certification*</u>, it is clear this case is a "negative value suit" and merits Class certification under 23(b)(2) F.R.C.P.

CVisPDF – www.texiss.com

## VII.
## Defendant Seeks To Avoid A Federal Injunction
## So That It Can Continue Its Illegal Actions

27.    Defendant's argument that a (b)(2) action for Plaintiff's proposed Subclass 1 is improper because "the predominate relief sought is monetary damages" is again another misstatement of the facts. **Subclass 1** members are NOT asking for ANY monetary damages because _they will never experience **NOT** being compensated for Defendant's loss of their 'Excluded Items'_.  If the Court issues an injunction prohibiting American Airlines from continuing to violate federal law by denying liability and compensation for 'Excluded Items', then the question of monetary damages for Subclass 1 members is a _moot_ question.

## VIII.
## Defendant's "Predominance" Question Is Misplaced In Its Challenge To
## Subclass 2 Certification Under 23(b)(2)

28.    The Fifth Circuit stated emphatically in Allison that the question of whether questions of law **or** fact common to the proposed Class predominate,_ is **NOT** a factor to be considered by the Court in determining if a (b)(2) Class action is warranted._ The degree to which these 7,500 Class members' claims are_ (1) homogenous, (2) cohesive and (3) not in conflict with each other_, as per Allison, warrant the Court certifying all 7,500 Class members claims into a single (b)(2) Class with three subclasses as all 7,500 claims for monetary relief against American Airlines are **EXACTLY THE SAME.**

15

## IX.
## Subclass 3 Certification Is Warranted Because Defendant NEVER Paid Consideration For Release Of 'Excluded Item' Claim

29.     Defendant's argument that, "There is an issue of liability and dispute as to the amount of damages for any passenger's lost baggage. Thus, the settlement payments are made in exchange for a release of a disputed claim and are not entitlements", ignores the law, this Court's liability ruling and the facts.

30.     The liability issue has been resolved by this Court already, American Airlines is liable to passengers for the loss of their property which includes certain items previously defined as 'Excluded Items' by Defendant. The question of damages is also not an issue as the law giving rise to passengers' right to compensation limits the monetary amount any one passenger can receive to $1,250. All passengers, under the mandatory requirements imposed by federal law on Defendant, are "entitled" to be compensated for the loss of their property.

31.     The Law. – 14 CFR 254 states that:

> "…an air carrier ***shall* not limit its liability** for provable direct or consequential **damages resulting from the disappearance of,** damage to, or delay in delivery of **a passenger's personal property, including baggage**, in its custody to **an amount less than $1,250** for each passenger." (emphasis added)

> The Court's Liability Ruling – By its Order of March, 1998, approving the

Magistrate's Report and Recommendation, this Court declared invalid and contrary to law Defendant's 'Notice of Exclusion' policy which it used to totally exempt itself from the liability requirements of 14 CFR 254 concerning certain 'Excluded Items'.

The Facts – Defendant received 7,500 claims from passengers whose property American Airlines was legally responsible for losing. It is undisputed that all 7,500 claims included the loss of an 'Excluded Item' for which Defendant totally and completely denied liability and made absolutely no compensation. It is also undisputed that the money 5,480 (out of 7,500) passengers did receive was for Defendant's loss of NON-Excluded Items **only** and that such limiting language was included in the accompanying letter sent to these 5,480 passengers **which Defendant itself drafted**. Defendant cannot now expand the purpose and intent of these checks and redefine the property covered by the compensation sent to also now encompass 'Excluded Items'. Defendant is stuck with the language it chose and included in its letters, whether it likes it or not.

32.     Defendant has not cited and cannot cite a single case that contradicts the Fifth Circuit's requirement that consideration must be given for a release to be valid. "Indeed, the 'majority of courts have taken the traditional and rigorously logical view' that a promisor's *mere performance of his legal obligation is not sufficient consideration to support a contract*, thereby nullifying the agreement" i.e. the release. (emphasis added) Calamari & Perillo, Contracts 149 (2nd Ed. 1977); General Intermodal Logistics Corp. V. Mainstream Shipyards & Supply, Inc., 748 F.2d 1071, 1075 (5th Cir. 1984). Defendant has a statutorily imposed affirmative duty to compensate passengers for having lost their property, including 'Excluded Items'. This Court's ruling on Plaintiff's individual case, entitles all 7,500 Class members to compensation and warrants (b)(2) Class certification.

17

## X.
## A Four Year Statute Of Limitations Is Warranted

33.     Defendant continues to cite Fifth Circuit cases dealing with shippers, cargo carriers and ocean liners, **NOT** *passengers and airlines*. Defendant's cite Carpenter v. Klosters Rederi A/S, 604 F.2d 11 (5th Cir. 1979) for the proposition that a one year statute of limitations as defined in a contract of carriage is enforceable. Defendant's reliance on Carpenter is clearly erroneous and inapplicable. Defendant does NOT tell the Court that Carpenter *involved a cruise ship passenger suing the cruise ship line* and ***involved a specific federal statute*** mandating a one year limitations period for persons suing a sea-going vessel transporting passengers i.e. 46 USC Appx. Sec. 183b. Carpenter has no bearing on this passenger/airline case and the provisions of 14 CFR 254.

34.     Plaintiff invites the Court to read the Supreme Court ruling in North Star Steel v. Thomas, 115 S.Ct. 1931 (1995), and the Fifth Circuit's ruling in Staudt v. Glastron Inc., 92 F.3d 312 (1996). These cases define the process a Court should use in determining what statute of limitations period should be used in a case where there is no applicable federal limitations period defined by the federal statute giving rise to the cause of action stated.

35.     These cases state the first step is for the Court to 'characterize the essence' of the federal statute action and then secondly, determine which state action is most analogous to it and thirdly, implement the corresponding limitations period. Clearly, Defendant's violation of the mandatory liability requirments imposed on it as a domestic air carrier by 14 CFR 254, is most analogous to a breach of contract action. This minimum liability requirement was stated in the

18

Contract of Carriage drafted by Defendant which it ignored and attempted to circumvent by its illegal 'Notice of Exclusion' policy.

36.    By disclaiming liability and denying passengers their right to compensation, Defendant has breached the terms and conditions of the contract regarding claims for lost passenger baggage and thus Texas' four year limitations period for breach of contract actions under Section 16.004 Texas Civil Practice and Remedies Code is applicable. Defendant's reliance on the one year limitations period cited in the contract of carriage is illegal under the laws of the forum state, i.e. Texas, which declare illegal as a matter of law any limitations period contained in a contract of less that two years in which a party can file suit for breach of contract. Section 16.070 Contractual Limitations Period, Texas Civil Practice & Remedies code states:

"(a) Except as provided by Subsection (b), a **person may not enter a stipulation, contract**, or agreement **that purports to limit the time in which to bring suit** on the stipulation, contract, or agreement to **a period shorter than two years.** A stipulation, contract, or agreement that establishes a limitations period that is **shorter than two years is *void* in this state**." (emphasis added)

Plaintiff requests a four year statute of limitations period be designated for the Class certification under 23(b)(2) F.R.C.P.

**XI.**
**In The Alternative, Plaintiff Requests Leave To Be Substituted As Class Representative By Another Passenger**

37.    Should the Court deem that Plaintiff cannot serve as Class Representative, Plaintiff requests leave to allow his substitution by another American Airlines passenger who meets the requirements of being a Class

19

  
member as contained in Plaintiff's Definition of Class in his Motion For Class Certification.

Wherefore, premises considered, Plaintiff prays this Honorable Court grant Plaintiff's Motion For Class Certification as a 23(b)(2) single Class, or in the alternative as three subclasses as defined previously.

Respectfully submitted,

Heriberto 'Eddie' Medrano
Attorney for Plaintiff
Fed. I.D. #5952
Texas Bar #13897800

1101 West Tyler St.
Harlingen, Texas  78550

Tel. 956-428-2412
Fax 956-428-2495

20

## CERTIFICATE OF SERVICE

I, Heriberto Medrano, hereby certify that a true and correct copy of the above

and foregoing *Plaintiff's Reply to Defendant's Response to Plaintiff's*

*Alternative Proposal For Class Certification-Subclasses* was sent certified

mail on this _20th_, day of October, 1998 to the following counsel of record as

follows:

Mr. James D. Struble
JACKSON & WALKER, L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202

Heriberto Medrano