United States District Court
Southern District of Texas
FILED

JUL 2 9 1999

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| HECTOR A. CASAS | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | B-96-207 |
| AMERICAN AIRLINES, INC., | § | |
| | § | JURY |
| DEFENDANT. | § | |

## DEFENDANT'S MEMORANDUM OF LAW TO MASTER SUMMARIZING LEGAL POSITIONS

TO THE HONORABLE MASTER PAUL G. HAJJAR:

COMES NOW American Airlines, Inc., Defendant, and files this Memorandum of Law to Master Summarizing Legal Positions, as follows:

### I. FACTS NECESSARY TO UNDERSTAND QUESTIONS PRESENTED

On or about September 3, 1996, Plaintiff Hector A. Casas, an attorney employed by Plaintiff's counsel, was returning to Harlingen as a passenger on an American Airlines flight that originated in Orlando, Florida. When Plaintiff arrived in Harlingen, one of his checked bags containing a video camera and accessories could not be located. Plaintiff filed a claim with American for $1,029, the claimed value of the camera. American denied the claim based upon the exclusion of liability for loss of a camera under American's Conditions of Carriage.

Plaintiff filed the instant suit for his individual loss of $1,029, and sought to certify a class of other similar passengers. Plaintiff invoked only federal question jurisdiction, purportedly pursuant to regulations under the Federal Aviation Act. Both parties moved for summary judgment on Plaintiff's individual claim.

On March 26, 1998, District Judge Filemon B. Vela, adopting a Report and Recommendation of Magistrate Judge Fidencio G. Garza, Jr., granted Plaintiff's motion and denied American's. The court, applying federal law, held that American's exclusion of liability provision was "reasonably communicated" to Plaintiff. However, the court went on to hold that the contractual exclusion was unenforceable based upon "implications" arising from 14 C.F.R. § 254.4, which provides that "[a]n air carrier shall not limit its liability for provable direct or consequential damages resulting from the disappearance of, damage to, or delay in delivery of a passenger's personal property, including baggage, in its custody to an amount less than $1250 for each passenger." Thus, the court awarded Plaintiff $1,029.

On or about July 31, 1998, American filed its Motion to Dismiss. American argued that the District Court lacked subject matter jurisdiction because Plaintiff sued to enforce the Federal Aviation Act and related regulations and neither the statute nor the regulations create a private right of action. The issue of subject matter jurisdiction, which may be raised as a matter of law at any point in the litigation, was not considered by Judge Vela or Judge Garza. On September 24, 1998, Judge Hilda G. Tagle denied American's Motion to Dismiss for Lack of Subject Matter Jurisdiction by written order. The Order does not state reasons for the ruling.

At a status hearing on January 14, 1999, Judge Tagle recognized that there were certain key legal issues (including those discussed herein) that needed final resolution prior to costly class certification and trial, and that the Fifth Circuit should consider these underlying substantive issues by interlocutory review. On June 11, 1999, Judge Tagle, in a telephone conference with the attorneys of record, indicated that she desired to revisit several substantive rulings made in the case, including the summary judgment ruling by her predecessor on the interpretation of 14 C.F.R. Part 254, and her own ruling denying American's motion to dismiss for lack of subject matter

CIMPDF – www.fesiss.com

jurisdiction. She said she would appoint a master to reevaluate these purely legal issues. On July 6, 1999, Judge Tagle referred two substantive legal issues to the Master. The issues referred to the Master are of great importance and could necessitate major changes to the way airlines have been operating for over fifty years.

## II. QUESTIONS PRESENTED IN JUDGE TAGLE'S ORDER

1.    Whether this cause of action arises under the federal common law or under the Code of Federal Regulations?

2.    Whether American Airlines, Inc.'s contract of carriage exempting it from liability on certain items is enforceable?

## III. ARGUMENT AND AUTHORITIES

**A.    Plaintiff failed to allege a proper basis for federal question jurisdiction, and therefore this case should be dismissed for lack of subject matter jurisdiction.**

Plaintiff alleged that jurisdiction in this case "arises under" the Federal Aviation Act and 14 C.F.R. Part 254, "specifically the Federal Aviation Act of 1958 sec. 101 et. seq., 49 U.S.C. App. Sec. 1301 et. seq. and 14 C.F.R. sec. 253 and 254." See Plaintiff's First Amended Original Complaint at § II.[1]  In other words, Plaintiff contends that the federal statute and regulations expressly or implicitly create a "private right of action" for which he may sue. American's Motion to Dismiss, contended that Plaintiff lacked a private right of action under 14 C.F.R. Part 254 (a regulation authorized by 49 U.S.C. § 1374(a)) or the Federal Aviation Act, and that Plaintiff should not be

---

[1] The Federal Aviation Act of 1958 cited by Plaintiff was superceded by the Airline Deregulation Act (ADA) of 1978. (Pub. L. 95-473, Oct. 17, 1978, 92 Stat. 1337). The ADA was recodified without substantial change in 1994 (Pub. L. 103-272, July 5, 1994, 108 Stat. 745). The current Act is entitled the Federal Aviation Act of 1994. Although the opinions cited in this brief refer to both the ADA and the Federal Aviation Act, American will refer to the statute as the Federal Aviation Act.

granted leave to amend his complaint to allege a separate jurisdictional basis under the federal common law.

>    1.   *There is no express or implied private right of action under the Federal Aviation Act or 14 C.F.R. § 254.4 sufficient to vest the United States District Court with subject matter jurisdiction over this case.*

Part 254 of the Code of Federal Regulations was promulgated in 1984 pursuant to 49 U.S.C. § 1374(a) [§ 404(a) of the Federal Aviation Act ("FAA")].[2] The Fifth Circuit has held twice, once before a three judge panel and once *en banc*, that there is no <u>federal</u> private right of action under § 1374(a), the statutory basis for 14 C.F.R. Part 254 upon which Plaintiff grounds his entire case. <u>Diefenthal v. C.A.B.</u>, 681 F.2d 1039, 1043-44 (5th Cir.), <u>cert. denied</u>, 459 U.S. 1107 (1982); <u>Hodges v. Delta Airlines, Inc.</u>, 44 F.3d 334, 340 n. 13 (5th Cir. 1995).[3] The Fifth Circuit *en banc* unmistakably held:

> We reiterate our <u>rejection</u> of Hodges' fallback position that even if federal law completely displaced her state law claim, an implied private right of action may be inferred from FAA § 1374(a). <u>Diefenthal v. CAB</u>, <u>supra</u>.

<u>Hodges</u>, 44 F.3d at 340 n.13 (emphasis added).[4]

---

[2] 47 Fed. Reg. 52987-01 at 52990 (November 24, 1982) (The Civil Aeronautics Board stated that the new Part 254 was promulgated under authority of sections 404(a) and 411 of the Federal Aviation Act, as amended). Section 404(a) was codified at 49 U.S.C. § 1374(a). It is now found at 49 U.S.C. § 41702. <u>See Diefenthal v. C.A.B.</u>, 681 F.2d 1039, 1043-44 (5th Cir.), <u>cert. denied</u>, 459 U.S. 1107 (1982). Section 411 was codified at 49 U.S.C. § 1381. It is now found at 49 U.S.C. § 41712.

[3] Similarly, Section 411(a) of the FAA [49 U.S.C. § 41712 (formerly 49 U.S.C. § 1381)], which grants the Department of Transportation authority to investigate whether an airline engaged in an unfair practice, does not create a private right of action. <u>Statland v. American Airlines, Inc.</u>, 998 F.2d 539, 541 (7th Cir.), <u>cert. denied</u>, 510 U.S. 1012 (1993); <u>Polansky v. Trans World Airlines, Inc.</u>, 523 F.2d 332, 338-40 (3d Cir. 1975).

[4] <u>Hodges</u> relied upon the Fifth Circuit decision in <u>Diefenthal</u>, 681 F.2d at 1042-44, in which the Fifth Circuit held that private litigants may not sue to enforce the Federal Aviation Act, including Part 252 concerning the regulation of smoking on aircraft.

The Fifth Circuit recently reiterated this long-standing rule of law in <u>Sam L. Majors Jewelers</u> <u>v. ABX, Inc.</u>, 117 F.3d 922 (5th Cir. 1997) ("<u>Jewelers</u>"), and held that there is no general express or implied private right of action under the Federal Aviation Act to recover for the value of damaged or lost cargo. <u>Jewelers</u>, 117 F.3d at 925. The Court also held that there was no indication that Congress "implicitly intended a private right of action to arise under the statutory scheme". <u>Id</u>. As the Fifth Circuit stated in <u>Jewelers</u>:

> Although the airline industry was regulated throughout most of its history, in 1978 Congress substantially deregulated the industry. <u>Under the new, limited regulatory regime, there is no express private right of action to recover the value of damaged or lost cargo. We also find no indication that Congress implicitly intended a private right of action to arise under the statutory scheme.</u>

<u>Id</u>.

<u>Jewelers</u> also relied on <u>Statland v. American Airlines, Inc.</u>, 998 F.2d 539 (7th Cir.), <u>cert.</u> <u>denied</u>, 510 U.S. 1012 (1993), for the proposition that federal courts rarely imply a private right of action in a statute "because of a strong presumption against their creation." <u>Jewelers</u>, 117 F.3d at 925. In <u>Statland</u>, a passenger brought a putative class action suit against American on the ground that the airlines' cancellation fee violated federal aviation regulations. <u>Statland</u>, 998 F.2d at 539. The Seventh Circuit <u>affirmed</u> dismissal of the case for lack of subject matter jurisdiction. <u>Id</u>. at 541. Noting the "strong presumption" against the creation of an implied private right of action, the Seventh Circuit held that while the federal aviation regulations were designed to protect consumers, that protection would come from enforcement of those regulations by the DOT and <u>not</u> in the creation of a private right of action. <u>Id</u>. at 540. The Seventh Circuit reasoned that "Statland cannot bootstrap consumers' rights into a law that does not mention them" and held <u>that plaintiff did not</u> <u>have a private right to enforce 14 C.F.R. Part 253</u>. <u>Id</u>. The Court also stated that if Ms. Statland

wanted American to change its ticket policies, "she may complain to the Department of Transportation". Id. at 542.

Several other circuits have likewise denied plaintiffs a private remedy under the Federal Aviation Act. See, e.g., Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1252 (6th Cir. 1996); Air Transp. Ass'n of America v. Public Util. Comm'n, 833 F.2d 200, 207 (9th Cir. 1987), cert. denied, 487 U.S. 1236 (1988); Montauk-Caribbean Airways, Inc. v. Hope, 784 F.2d 91, 97 (2d Cir.); cert. denied, 479 U.S. 872 (1986); Polansky v. Trans World Airlines, Inc., 523 F.2d 332, 338-40 (3d Cir. 1975). As the Sixth Circuit noted:

> Every court faced with the question of whether a consumer protection [sic] provision
> of the ADA [Airline Deregulation Act] allows the implication of a private right of
> action against an airline has answered the question in the negative.

Musson, 89 F.3d at 1252 (citing Statland) (emphasis added). Plaintiff has cited no case to the contrary holding that a private right of action exists.

> 2.   *Although the Fifth Circuit in Jewelers recognized a federal common law*
> *cause of action, the Plaintiff's failure to initially plead it divested the District*
> *Court of jurisdiction and the District Court had no power to grant Plaintiff*
> *leave to amend his Complaint and should have dismissed the case.*

After American filed its Motion to Dismiss, the Plaintiff, recognizing his jurisdictional defect, sought leave to amend his complaint to allege jurisdiction based upon federal common law. The Court (over American's objection) granted Plaintiff leave to file his Second Amended Complaint, which alleges federal question jurisdiction under federal common law. The Court erred in granting Plaintiff leave to amend his complaint for it is well settled that the existence of federal jurisdiction must be disclosed in the first complaint filed rather than in some later amendment. Mullen v. Torrance, 22 U.S. (9 Wheat) 536 (1824) (jurisdiction "depends upon the state of things

at the time the action is brought"); Mobil Oil Corp. v. Kelley, 493 F.2d 784, 786 (5th Cir.),

("jurisdiction is determined at the outset of the suit"), cert. denied, 419 U.S. 1022 (1974).

If jurisdiction is lacking at the outset, the district court has no power to do anything with the

case except dismiss. See Aetna Cas. & Sur. Co. v. Hillman, 796 F.2d 770, 776 (5th Cir. 1986) ("At

the commencement of this suit, there was not complete diversity of citizenship and the federal

district court had no subject matter jurisdiction. If a federal court lacks subject matter jurisdiction

it must dismiss the action."). Indeed, where, as here, there is no jurisdiction, the complaint may not

be amended, and the District Court erred in allowing the amendment. Id. at 775-76. Thus, the

District Court was without power to grant Plaintiff's motion to amend, and erred in doing so.

Accordingly, the Master should answer the first question that the Code of Federal

Regulations is not a basis for federal jurisdiction and should recommend that the case be dismissed

for lack of jurisdiction as set forth above.

**B.     Under any jurisdictional theory, American prevails as a matter of law because
its exclusion of liability clause is valid and enforceable.**

Even assuming that it was not error to grant Plaintiff leave to file his Second Amended

Complaint, and that this Court has jurisdiction under the federal common law, American prevails

as a matter of law on the merits of Plaintiff's claim. The federal common law, as recently explained

by the Fifth Circuit in Jewelers, recognizes a federal common law cause of action for lost cargo, but

also recognizes and fully enforces ticket contracts which disclaim liability for items such as jewelry.

Jewelers, 117 F.3d at 931. ("We therefore hold that the provisions included on Airborne's airbill

effectively limited its liability for the goods shipped by Jewelers, and thus, Jewelers may not recover

for its loss."); see also Blair v. Delta Air Lines, 344 F. Supp. 360 (S.D. Fla. 1972), aff'd. 477 F.2d

564 (5th Cir. 1973). Based upon Jewelers' unequivocal holding, therefore, Plaintiff's case is entirely

without merit and judgment should be rendered that plaintiff take nothing from American. Jewelers, 117 F.3d at 931. Plaintiff cannot circumvent this holding by arguing that § 254.4 invalidates American's exclusion of liability provision, for to do so is tantamount to recognizing a "private right of action" under § 254.4 which, as demonstrated above, would be contrary to well-established Fifth Circuit precedent.

For at least fifty years, commercial airlines such as American have included a term in their Conditions of Carriage informing passengers that the airline does not accept certain items, such as cash, jewelry, cameras, and other similar articles, and that the airline is not liable if such items are lost or damaged. Such exclusions have long been upheld, and the rationale was explained by United States District Judge Irving Kaufman a half a century ago:

> The reason for the development of valuation agreements was to give the carrier the right to receive compensation commensurate with the risk taken by accepting the cargo for transportation. . . . It does not seem unreasonable for the defendant to require that a passenger carry such valuable items as jewelry at his own risk. If this Court were to agree with plaintiff's contention, that excluding or limiting liability is unreasonable and unlawful, defendant and other carriers would be subject to endless claims, many undoubtedly fraudulent, against which the carriers would have little or no protection. Indeed, in many cases the carrier would have no way of ascertaining whether the article claimed as lost actually was carried. How, for example, could the carrier here verify that there was jewelry in the bag which was misdelivered. The necessity for safeguards against questionable claims was, in all probability, the practical rationale for the development of valuation agreements; a like rationale applies to the exclusion clause in this case.

Lichten v. Eastern Airlines, Inc., 87 F.Supp. 691, 695-96 (S.D. N.Y. 1949), aff'd 189 F.2d 939 (2d Cir. 1951).

American's Conditions of Carriage unambiguously decide this case. Nevertheless, the District Court has held that such a contract term, relied upon for fifty years, is unenforceable. It did so based upon an "implication" arising from 14 C.F.R. Part 254. We believe that the District Court's holding is fundamentally flawed and unsupportable. Under this holding, if a passenger asserts that

his lost baggage contained $1,200 cash, American is responsible for that loss of cash and cannot rely upon the exclusion in its ticket, the price of which allocated the loss to the passenger and not the air carrier. If allowed to stand, the entire airline industry will be required to change an industry practice that has existed for half a century, without any criticism by the federal agency that is charged with oversight of the airlines and that adopted the rule on which Plaintiff has based his entire case.

1.  *Federal law permits exclusions in Conditions of Carriage.*

The pivotal legal issue is whether American may lawfully disclaim liability for valuable or fragile items. Federal law, 49 U.S.C. § 41707 and 14 C.F.R. § 253.5(b)(1), explicitly authorizes American to incorporate by reference certain contract terms that form the basic contract between American and its passengers. 49 U.S.C. § 41707 provides:

> To the extent the Secretary of Transportation prescribes by regulation, an air carrier may incorporate by reference in a ticket or written instrument any term of the contract for providing interstate air transportation.

49 U.S.C. § 41707 (emphasis added). The Department of Transportation ("DOT") has, in fact, prescribed a regulation which governs the notice that must be given to contractually limit certain items from baggage liability by incorporating by reference the terms of the contract. Specifically, 14 C.F.R. § 253.5(b)(1) states:

> (b)   The incorporated terms may include and passengers may obtain from any location where the carrier's tickets are sold within the United States further information concerning:

> (1)   Limits on the air carrier's liability . . . for loss, damage, or delay of goods and baggage, including fragile and perishable goods.

14 C.F.R. § 253.5(b)(1) (emphasis added). American incorporated on its ticket the limitations on baggage liability that are pertinent here.

Plaintiff asserts that 14 C.F.R. Part 254, which sets a minimum limit of $1,250 for lost baggage, renders unenforceable a limit or exclusion of liability for loss of any items. This position is erroneous. First, Part 254 does <u>not</u> state that an airline may <u>not</u> decline, as a part of its contract, to accept legal responsibility for losses of certain items. Indeed, as just seen, Part 253 authorizes a carrier to set limits on certain items of baggage, including fragile and valuable items. Moreover, when the Civil Aeronautics Board ("CAB"), the responsibilities of which are now assumed by the DOT, proposed 14 C.F.R. Part 254 on November 24, 1982, the CAB declared its intent with regard to the minimum liability limit and the allowance of certain exclusions of liability.[5] The CAB did not endorse the Plaintiff's view that Part 254 was intended to declare decades of airline practice to now be invalid. Indeed, the CAB, fully consistent with American's views, recognized that an airline may choose to exclude certain items and give notice of it to passengers. The CAB enacted rules which provide for an overall baggage liability limit (then $1,000, now $1,250) and grant an airline the right to <u>exclude</u> certain items from the coverage of the minimum liability rule. As the CAB explained in its "Reasons for Adopting" Part 254:

> The Board is raising the liability limitation from $750 to $1000 because of the significant inflation of consumer prices over the last 6 years since the limitation was set. The Board finds that $1000 is a more reasonable limitation, which will benefit passengers without a significant burden on carriers. Passengers are guaranteed that air carriers will not unreasonably limit their liability for lost, damaged or delayed baggage. <u>They will receive notice of any items, such as fragile or perishable goods, that are excluded from the coverage.</u>

47 Fed. Reg. 52987, 52990 (November 24, 1982) (emphasis added).[6]

---

[5] This proposal is found at 47 Fed. Reg. 52987-01.

[6] In November 1982, the Board initially proposed a baggage liability limit of $1000; when the rule finally became effective on April 10, 1984, the limit was increased to $1250 per passenger because of inflation. See 49 Fed. Reg. 5065 (February 10, 1984).

<u>DEFENDANT'S MEMORANDUM OF LAW TO MASTER SUMMARIZING LEGAL POSITIONS</u>          PAGE 10

This interpretation by the CAB -- that passengers are to receive <u>notice</u> of exclusions and not that exclusions are invalid -- has never changed.  Nothing between the initial promulgation of the regulation by the CAB in November of 1982 until its final adoption in April of 1984 evidences any intent by the CAB to depart from its view, stated above, that carriers will have a liability limit of $1250 and passengers will receive notice that certain items are, in the words of the CAB, "<u>excluded from coverage</u>."  47 Fed. Reg. at 52990.  Indeed, in the February 10, 1984 commentary when Part 254 was finally adopted, the CAB reaffirmed that the comments in the November 24, 1982 Federal Register continue to be valid.  According to the CAB:

> The basic question of whether there should be any Federal baggage liability rule at all was considered and discussed in ER-1305, 47 FR 52987, November 24, 1982. <u>The Board finds that the conclusions drawn at that time continue to be valid</u>.

49 Fed. Reg. at 5070 (February 10, 1984) (emphasis added).

Thus, the CAB plainly had no intent to declare an airline's contractual exclusion to be unenforceable.  Since Part 254 was promulgated in 1984, neither the CAB nor the DOT has ever taken any action to prevent carriers such as American from relying upon and enforcing their exclusion of liability provisions in their tickets.  It is important to note that Judge Vela, in ruling on American's motion for summary judgment, did not consider the CAB's interpretation of 14 C.F.R. Part 254, as set forth above.  Therefore, based upon the regulations at issue and CAB's interpretation of those regulations, the exclusion of liability clause is in fact enforceable.

### 2. *Federal common law in the Fifth Circuit allows for exclusions of liability.*

The Fifth Circuit has recently considered an exclusion of liability clause contained in an airline's Conditions of Carriage and enforced it as written.  In <u>Jewelers</u>, 117 F.3d at 930-31, the Fifth Circuit affirmed summary judgment for an airline and held that the airline's Condition of Carriage, which specifically excluded liability for the losses of jewelry was valid and enforceable.

In the present case, Judge Vela concluded that <u>Jewelers</u> is inapplicable because it "did not deal with passenger flights." While <u>Jewelers</u> concerned a cargo airline, that distinction is not one of legal significance. <u>Jewelers</u> reaffirmed the federal common law principle that airlines may limit their liability and relied upon passenger baggage cases to adopt its "reasonable communicativeness" test. <u>See</u> 117 F.3d at 930, <u>citing Deiro v. American Airlines, Inc.</u>, 816 F.2d 1360, 1365 (9th Cir. 1987) (airline passenger bound by baggage liability limitations contained in ticket). No distinctions were drawn in <u>Jewelers</u> between passenger baggage and airfreight. Thus, <u>Jewelers</u> supports and compels a take nothing judgment in favor of American.

> 3. *Federal common law from other jurisdictions further supports American's position.*

The adoption of Parts 253 and 254 was not a change in airline practice.[7] In fact, case law has allowed airlines to disclaim liability for articles of exceptional liability, like cameras and jewelry, for almost fifty years. <u>See Lichten v. Eastern Airlines, Inc.</u>, 189 F.2d 939 (2d Cir. 1951) (affirming summary judgment that airline not liable for loss of jewelry in checked baggage); <u>Tishman & Lipp, Inc. v. Delta Air Lines</u>, 413 F.2d 1401 (2d Cir. 1969); <u>Blair v. Delta Air Lines, Inc.</u>, 344 F. Supp. 360, 365 (S.D. Fla. 1972), <u>aff'd</u> 477 F.2d 564 (5th Cir. 1973). In <u>Jewelers</u>, the Fifth Circuit followed this longstanding airline passenger precedent which has upheld disclaimers of liability for valuable and fragile items.

In fact, the issue presented here arose long ago when the courts were called upon to construe tariffs filed with the CAB which, like the Conditions of Carriage here, included exclusions of jewelry and cameras <u>and</u> also had a minimum liability limit. In <u>Tishman</u>, the Second Circuit affirmed judgment for the airline, holding it lawfully excluded its liability for lost jewelry. The court

---

[7] The regulations were enacted after deregulation under the ADA, and allowed airlines to include terms by reference after the ADA eliminated the obligation to file tariffs.

was presented with the same argument advanced by Plaintiff in the above-referenced case — that

the minimum liability limit implicitly bars the airline from any exclusion of losses for jewelry.

Tishman, 413 F.2d at 1405. The Second Circuit soundly rejected the argument:

> Appellant maintains that the tariff provisions relied upon by Delta are inconsistent
> and confusing and for this reason none of them can be given effect. Appellant points
> to Rule 70(c) which denies any liability for jewelry and compares it with Rule 71
> which limits liability to $250 unless a higher value is declared. There is no
> inconsistency. Rule 71 limits liability, *if any*, to the lesser of $250 or the declared
> value. However, since appellant's claim is based upon loss of jewelry, that claim
> comes within Rule 70 which provides that Delta is *not liable* for the loss of jewelry
> included in the passenger's checked baggage. The limitation of liability provision
> therefore does not come into play, since there is no liability at the outset. Rule 70
> alone governs the jewelry claim, and there is no contradiction.

Id. (italics in original, underlining added).[8]

Accordingly, as the above discussion demonstrates, American's exclusion of liability clause

is enforceable, and the District Court's holdings to the contrary are erroneous.

> ### 4. *The District Court relied on erroneous authority that is inconsistent with every court considering the issue.*

The Magistrate Judge's Conclusion of Law No. 4, later incorporated and accepted by the

District Court, suggests that a common carrier cannot disclaim liability through reasonably

communicated terms in its Conditions of Carriage. The Court relied upon dicta from a district court

opinion from New York, Feature Enterprises v. Continental Airlines, 745 F.Supp. 198 (S.D.N.Y.

1990). Feature is no support to overturn a half-century of case law enforcing exclusions. In fact,

Feature is erroneous and contrary to the law in this Circuit. Second, Feature cites no authority for

its interpretation of Parts 253 and 254 and we are aware of none. Third, Feature is contrary to

binding precedent in the Second Circuit. Tishman, 413 F.2d at 1405 (excluding air carriers' liability

---

[8] The Fifth Circuit follows Tishman. See Blair, 344 F.Supp. at 365-67, aff'd, 477 F.2d 564 (5th Cir.
1973); Jewelers, 117 F.3d at 928 n.11.

for $50,000 loss of jewelry contained in passenger baggage shipped as air freight); see also Lichten, 189 F.2d 939 (affirming summary judgment and holding air carrier not liable for jewelry in passenger baggage).   Fourth, the Feature court did not have the benefit of the rule-making commentary from the CAB, quoted at pp. 10-11 above, which clearly explains that Part 254 was never intended to declare unenforceable exclusions of liability for certain items.  It is also worthy to note that no other reported federal case has relied upon Feature for the proposition asserted by Plaintiff.

Thus, the District Court's holding in the instant case clearly contradicts the intent and interpretation of the CAB when it promulgated Part 254.  The District Court should have reached the same interpretation of the regulation as did the agency that drafted it. Accordingly, the Master should answer the second question that American's exclusion of liability for cameras is valid and enforceable.

## IV. CONCLUSION

American requests that Master Hajjar recommend dismissal of this case for lack of jurisdiction, or alternatively, on the merits, for the following reasons: (1) There is no express or implied private right of action under the Federal Aviation Act or 14 C.F.R. § 254.4 sufficient to vest the United States District Court with subject matter jurisdiction over this case; (2) Although there is federal common law jurisdiction under Jewelers, the Plaintiff failed to plead this basis and the District Court had no power to grant Plaintiff leave to amend his Complaint and should have dismissed the case; and (3) Even if the District Court has jurisdiction to consider Plaintiff's claims, American prevails under the federal common law as a matter of law because its exclusion of liability clause contained in its Conditions of Carriage is valid and enforceable.

Respectfully submitted,

JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000
(214) 953-5822 (Telecopy)


By: _____
David T. Moran
State Bar No. 14419400
Attorney-In-Charge
Brian A. Kilpatrick
State Bar No. 00784392

Jorge C. Rangel
State Bar No. 16543500
The Law Offices of Jorge C. Rangel
719 S. Shoreline Blvd., Ste. 501
Corpus Christi, Texas 78403
(512) 883-8500
FAX (512) 883-2611

ATTORNEYS FOR DEFENDANT


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been served upon the following counsel of record via certified mail, return receipt requested, on this 28th day of July, 1999.

Heriberto (Eddie) Medrano
Attorney at Law
1101 West Tyler
Harlingen, Texas 78550


_____
Brian A. Kilpatrick

2281633.12